# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1901.

---

*(Continued from Volume 167.)*

THE STATE ex rel. THE WABASH RAILROAD COM-
PANY v. BLAND et al., Judges.

#### In Banc, March 19, 1902.

1. **Imports:** TRANSPORTATION: CUSTOM DUTIES: SUBROGATION: APPEL-
LATE JURISDICTION. The laws of the United States do not contem-
plate that a railroad or other carrier shall pay import duties at any
time or place, but that they shall be paid at the port of entry by the
consignee, and no right of subrogation to the lien of the government
upon such goods for such duties, is conferred, expressly or impliedly,
by such laws, upon the carrier which pays them. The payment of
the import duties by the last carrier of the goods to the carrier
from which it had received them and which had voluntarily ad-
vanced the duty under a mistaken impression that the port of entry
was at the place where it had received the goods, does not subrogate
the last carrier to the lien of the United States on the goods for·the
dues, but the only question raised by such payment is a simple ques-
tion of the ·right of subrogation in equity as between the carriers
and consignee, and if the amount paid in such case does not give the
Supreme Court jurisdiction of the appeal, it does not have jurisdic-
tion.

2. **Appellate Jurisdiction:** CERTIORARI. The writ of certiorari reaches
only questions of jurisdiction. So that if a Court of Appeals has

Vol 168 mo—1 (1)

State ex rel. v. Bland.

final jurisdiction in a cause, the Supreme Court will not compel the transfer of the case on the ground that it has authority to exercise original and superintending control over all inferior courts of record.

## Certiorari.

WRIT QUASHED.

*Geo. S. Grover* for relator; *J. L. Minnis* of counsel.

This court has ample jurisdiction to hear and determine the question in issue in this controversy, and certiorari is the proper proceeding where, as in this instance, a Federal question is involved, and where the appellate court has refused to transfer the cause to this court.   Constitution, art 6, secs. 3 and 12; Rector v. Price, 1 Mo. 198; Owen v. Andrew Co., 49 Mo. 372; State ex rel. v. Dowling, 50 Mo. 134; Railroad v. State B'd of Equal'n, 64 Mo. 294; Railroad v. Young, 96 Mo. 39; State ex rel. v. Switzler, 143 Mo. 287.

*Chas. E. Pearce* and *E. C. Kehr* for respondents.

There is no question of the power of the Supreme Court of Missouri to issue a writ of certiorari to a court of inferior jurisdiction.   But the Supreme Court will not take cognizance by certiorari of a subject-matter which is not within the scope of its appellate jurisdiction.   A writ of certiorari is in the nature of a writ of error, and if a writ of error will not lie, or an appeal be granted, then a writ of certiorari will not be granted, because it would be permitting the Supreme Court by indirect means to assume a jurisdiction which it can not have by the usual mode of procedure.   Britton v. Steber, 62 Mo. 373; State ex rel. v. Smith, 101 Mo. 174; Railroad v. Young, 96 Mo. 43.   The object of the writ is to confine inferior tribunals within their jurisdiction, to prevent them from exercising powers not delegated to them, and not to correct

errors they may commit in executing powers that are delegated. Talmadge v. Potter, 12 Wis. 317; Birdsall v. Phillips, 17 Wendell 464; Tewkesbury v. Commissioners, 117 Mass. 563. The court below having the cause, and prima facie jurisdiction, and proceeding regularly, all the rest relates to the merits. These include the evidence, its competency and effect, and the judge's charge, and it is not the office of certiorari or even a writ of error to bring up such matters for review. The court will not consider aught but matters which appear on the face of the record and which constitute jurisdictional facts. Railroad v. Carlisle, 94 Mo. 166; Bateson v. Clark, 37 Mo. 31, 34; Birdsall v. Phillips, 17 Wendell 464; Raizer v. Lasch, 28 Wis. 268.

MARSHALL, J.—This is an original proceeding, by certiorari, whereby the cause of Charles E. Pearce vs. the Wabash Railroad Company, was removed from the St. Louis Court of Appeals to this court, after final judgment in that court in favor of the plaintiff. The petition for the writ of certiorari was based upon the allegation that the St. Louis Court of Appeals had exceeded its jurisdiction or was without jurisdiction, because "the validity of a treaty or statute of or authority exercised under the United States is drawn in question" in the case of Pearce vs. the railroad aforesaid, and that the defendant in that case had invoked and been denied the protection of such Federal statute or authority. And it was upon this showing and claim that the writ of certiorari was issued.

The record in the case of Pearce vs. the relator, certified to this court under said writ, presents this state of facts:

Pearce shipped four boxes of curios, of the value of $1,000, from Yokohama, Japan, to Wilfred Schade & Company, at St. Louis, *in bond*, by the Canadian Pacific Railway Company, prepaying the freight. The port of entry, specified in the clearance certificate of the United States deputy consul-general, was St. Louis, where the duties were to be paid. The

goods were carried by said railroad company, on the steamer "Empress of China," from Yokohama to Vancouver, British Columbia. There the said railroad placed them in a properly bonded car, on its road, and consigned these goods with others to "F. Jones, St. Paul. For Wilfred Schade & Company, St. Louis." That railroad transported said goods over its own road, and over its connecting road, the Minneapolis, St. Paul & Sault St. Marie railway to St. Paul. At St. Paul the United States custom officers opened the goods, assessed the import duties at $264.31, and repacked the goods. The Minneapolis, St. Paul & Sault St. Marie railway paid said duties, and then turned over the goods, *out of bond*, to the Chicago, Milwaukee & St. Paul Railway Company, for transportation to St. Louis, and collected from that railway the duties it had paid. The Chicago, Milwaukee & St. Paul Railway Company transported the goods to Given, Iowa, and there delivered them to the Wabash Railroad Company to be by it transported to St. Louis. That company transported them to St. Louis. Wilfred Schade & Company had assigned the bill of lading to the real owner, Pearce, and when the goods reached St. Louis, the Wabash company refused to deliver the goods to Pearce unless he would first pay the $264.31 duties (which the Wabash then thought were simply advanced charges, but which it ascertained before it paid it was the duty on the goods) and $1.24 freight. Pearce noticed that the boxes had been opened, and refused to pay anything unless he was allowed to first examine them and see their condition, promising, however, if they were intact and in good order to pay said duty and freight. The railroad refused to permit such an inspection, or to deliver the goods until the charges were paid, and thereupon Pearce instituted a replevin suit against the railroad and secured possession of the goods. He then ascertained that some of the goods were missing and others damaged, his total loss being stated to be over three hundred dollars.

The answer of the railroad sets up these facts and alleges

that it was necessary to pay the duty in St. Paul in order to complete the transportation, and asks that it be subrogated to the right of the United States government in respect to said duty, and that it be decreed an equitable lien on the goods therefor. The reply claims that the goods were shipped in bond, and that St. Louis was the port of entry, and that the goods would never have been unpacked or damaged and no duty would have been collected or demanded by the United States anywhere until the goods arrived in St. Louis, if it had not been for the wrongful act of the Canadian road at Vancouver in changing the destination from St. Louis to St. Paul, and that such conduct amounted to a conversion, and, hence, neither the Wabash nor other road was authorized to pay any such import duty, and that the freight was prepaid and, hence, the charge of $1.24 was unlawful.

The plaintiff obtained judgment in the circuit court. The railroad appealed to the St. Louis Court of Appeals, where two hearings were had. The first decision was unanimous in favor of the plaintiff. Upon a rehearing being granted, the majority again decided in favor of the plaintiff. The court refused to certify the case to this court, and the dissenting judge joined in that refusal. Then this writ of certiorari was issued. The plaintiff, Pearce, moves to quash the writ on the ground that no Federal right has been denied the relator.

I.

The contention of the relator is that under the statutes of the United States, it is subrogated to the rights of the United States, and has a lien upon the goods for the import duties that were paid by its connecting road in St. Paul.

It is claimed that sections 3100 and 3102, Revised Statutes of the United States (2 Ed.), 1878, and vol. 1, Supplement to the Revised Statutes of the United States of 1891, pages 294 and 540, give this right of subrogation.

An examination of these statutes fails to support this contention. There is not a word in any of them and there is nothing in the context, spirit or purpose of any of them that gives countenance or color to the contention. On the contrary, they provide a method whereby goods may be imported into the United States from foreign countries, *in bond*, and transmitted to interior ports of entry, so that they will not have to be opened or examined or the duties collected at the first port of arrival, but only a record kept at such port of arrival of the fact, and the inspection and assessment and collection of the duty be made at the interior port of entry. The whole scheme contemplates that nothing such as happened in this case, shall occur. Instead of covering or embracing any idea that the carrier shall pay the import duty at any point or at any time, the method provided by the statute is that when the goods arrive at the port of entry specified in the manifest or clearance certificate, they shall be turned over to the governmental officers, and the consignee shall pay the duty to the government.

This being the law and this the state of facts presented by the record certified to this court, it follows that no statute of or authority exercised under the United States is drawn in question in the case of Pearce vs. the Wabash Railroad Company; that the laws of the United States do not contemplate that the carrier shall pay the import duties at all, at any time or place, but that they shall be paid at the port of entry by the consignee, and that no right of subrogation to the right or lien of the United States is conferred either expressly or impliedly by the laws of the United States upon a carrier or upon any one else. It also follows that no such right was asserted by the defendant in the circuit court by its pleadings, but that the right of subrogation asserted in its answer is an alleged equitable right of subrogation, and not a legal or equitable right conferred by the statutes of the United States.

The right of the government of the United States to in-

spect to prevent frauds on the revenue, at any point in transit is reserved by section 3102, Revised Statutes United States 1898, but no such question is present in this case, as no such inspection for such a purpose was made in this case.

The case resolves itself, then, into this: No Federal protection has been invoked and denied to the defendant by the lower courts. The case does not fall within the appellate jurisdiction of this court. The question involved is a simple question of the right of subrogation in equity. The St. Louis Court of Appeals has final appellate jurisdiction in such cases where the amount involved does not confer jurisdiction upon this court, and such is not the case here. Is this, then, a proper case for the exercise of the original and superintending jurisdiction of this court over all inferior courts of record, by the use of the writ of certiorari, under section 12 of article 6, Constitution of Missouri? If it is, then any litigant who loses in any ordinary action involving no Federal, or constitutional, right, would have a right to have the decision of any court reviewed by certiorari. The writ of certiorari never was intended to perform such functions. It reaches only questions of jurisdiction. It does not deal with the merits of controversies between the litigants. It acts upon judicial bodies, and their proceedings, not upon private controversies.

For these reasons, it is beyond dispute that the writ of certiorari was issued in this case upon a misconception of the questions presented to and decided by the St. Louis Court of Appeals, and, hence, the motion to quash the writ should be sustained.

Under these conditions, it would be improper to consider the merits of the case of Pearce vs. the Wabash Railroad Company at all.

The writ of certiorari is therefore quashed. All concur.