OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1908.

*(Continued from Volume 215)*

## SARAH McKENZIE v. UNITED RAILWAYS COMPANY, Appellant.

**Division Two, January 4, 1909.**

1. **NEGLIGENCE: Under section 2864.** A petition charging that a person other than a passenger was killed by reason of the negligence of a servant of a street railway company in running a public conveyance, states a case under section 2864, Revised Statutes 1899.

2. **———: ———: Street Railway.** Section 2864, Revised Statutes 1899, did apply to street railways prior to the Act of 1905, and does apply to them since that enactment, and makes liable a street railway company whose motorman in running a street car was guilty of negligence that resulted in the death of a person who was neither a passenger nor an employee of the company.

3. **———: ———: Naming Section.** Where the negligence stated in the petition is negligence in running the car and the petition asks for $5,000 for the killing of a driver of a wagon, it is unnecessary for the petition to refer to section 2864, Revised Statutes 1899, in order to bring the case within its purview.

(1)

4. ——: ——: $5,000: For Care, Maintenance, Etc. The fact that the plaintiff in her prayer alleges that her damages of five thousand dollars resulted from the loss of the care, maintenance and support of her husband, whose wagon was struck by a street car while he was driving on the car track, and he was killed, does not render the petition bad after verdict, or take the cause out from under the purview of section 2864. If the other facts alleged bring the case within the purview of that statute, the words "care, maintenance and support" may after verdict be rejected as surplusage.

5. ——: ——: ——: ——: Verdict for $5,000: Instruction Not Exceeding $5,000. Where the petition and evidence brought the case within the statute, a verdict for the statutory penalty will not be reversed because the instructions told the jury they could assess plaintiff's damages at a sum not exceeding that penalty—not even where there was evidence as to the value of deceased husband's services and as to the number of children he left surviving him.

6. ——: Admission of Pleadings: Vehicle on Track. It is unnecessary to show by testimony a fact admitted by the pleadings. Where the answer pleads that plaintiff's husband lost his life by his own carelessness "in driving on and along a car track without looking and listening for approaching cars, when, by so doing, the deceased might have seen or heard said approaching car in time to have avoided the collision," defendant who concedes that the motorman's view was unobstructed for a block and that he could have seen the vehicle for three hundred feet, thereby admits that the wagon was on the track a sufficient length of time to have enabled the motorman to see it and to have stopped his car in time to avoid striking it, and it is therefore unimportant whether or not there was evidence tending to show the distance the car was from the wagon at the time the driver drove upon or near the track.

7. ——: Vehicle on Track: Trespasser. The driver of a wagon along a public street is not a trespasser merely because he drives his wagon along or on the track laid in the street.

8. ——: Contributory: Vehicle on Track: Presumption of Care. Where the evidence tends to show that the driver of the wagon was in the act of leaving the street railway track and had so far succeeded that the car struck only the right hind wheel of his wagon; that he died soon after the collision, without explaining how close behind him the car was; that the car was running in excess of the ordinance rate, which is pleaded as negligence; that the motorman could have seen the vehicle three hundred feet and the track was unobstructed; that no warning was given, the law will presume, in the absence

of evidence to the contrary, that the driver was in the exercise of ordinary care and looked to see if any car was coming that might threaten his safety; and these facts, together with the admission of the answer that he was on the track and that the motorman saw him a sufficient length of time to have avoided hitting him, were sufficient to authorize the jury to infer that the defendant's motorman did not keep the vigilant watch exacted by the pleaded ordinance which required motormen to keep a vigilant watch for vehicles on or about to move toward street car tracks and to stop their cars in the shortest time and space possible after danger became apparent.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*Boyle & Priest* and *T. E. Francis* for appellant.

(1) The petition does not state a cause of action and is insufficient to support the judgment, for that, while it counts upon alleged acts of negligence of the motorman "whilst operating the street car," under section 2864, Revised Statutes 1899, instead of praying for the penalty provided by that section, its prayer is for compensatory damages, under sections 2865 and 2866, Revised Statutes 1899. Casey v. Railroad, 205 Mo. 721; King v. Railroad, 109 S. W. 859. (2) The cause of action declared upon being bottomed on section 2864, the instruction on the measure of damages is erroneous, in that it directed the jury to "assess plaintiff's damages at such sum, not exceeding $5,000, as they believed from the evidence would be a fair pecuniary compensation for any loss of his support and maintenance," instead of directing them, as it should have done, in the event they found for plaintiff, to assess her damages in the fixed penal sum of $5,000. Casey v. Railroad, 205 Mo. 721; King v. Railroad, 109 S. W. 859. (3) The instruction in the nature of a demurrer to the evidence offered by defendant

should have been given for the reason that plaintiff failed to prove defendant to have been guilty of any act of negligence proximately resulting in the death of her husband.  There was evidence tending to prove that the maximum speed permitted by ordinance at the *locus in quo* was fifteen miles per hour; that the car in question was running at from fifteen to eighteen miles per hour; that it could have been stopped within from eighty to ninety feet, and that it collided with the wagon; but there was no evidence, direct or inferential, tending to show when deceased drove upon the track, how long he had been thereon, or how far the car was from him when he did so.  (a)  The petition counts and the case was submitted to the jury on two theories of negligence only; namely, violation of the Speed Ordinance and violation of the Vigilant Watch Ordinance.  (b)  The defendant cannot be held liable on the theory that its car ran at a speed prohibited by ordinance, because there was no proof that the accident would not have occurred had the Speed Ordinance been observed, and, therefore, no causal connection was established between the alleged negligence and the death of deceased.  Evans Brick Co. v. Railroad, 17 Mo. App. 624; Molyneux v. Railroad, 81 Mo. App. 25; Warner v. Railroad, 178 Mo. 125; King v. Railroad, 109 S. W. 671.  (c)  Defendant cannot be held liable on the theory that its motorman failed to obey the mandate of the Vigilant Watch Ordinance, because there was no proof as to the distance deceased was from the car when he drove upon the track and no showing, therefore, that the car was not stopped "in the shortest time and space possible upon the first appearance of danger to deceased" as disclosed by a "vigilant watch."  Zurfluh v. Railroad, 46 Mo. App. 636; Koepel v. Railroad, 181 Mo. 395; Warner v. Railroad, 178 Mo. 125; Reno v. Railroad, 180 Mo. 486; Petty v. Railroad, 179 Mo. 676; Theobald v. Railroad, 191 Mo. 433.  (d)  For aught that appears in this

record, deceased might have driven upon the track immediately in front of the car, in which event no recovery could be had. Schmidt v. Railroad, 191 Mo. 215; Reno v. Railroad, 180 Mo. 469. The evidence leaves it to a mere conjecture as to when deceased entered the danger zone, and is, therefore, wholly insufficient to support the verdict. Such a verdict cannot stand. Warner v. Railroad, 178 Mo. 134; Oglesby v. Railroad, 177 Mo. 272; Byrnes v. Light Co., 109 S. W. 1065; Goransson v. Mfg. Co., 186 Mo. 300.

*A. R. Taylor* and *Howard Taylor* for respondent.

(1) It is first contended in this court by appellant, under his first point, that this case should be reversed because the verdict is compensatory, and not punitive damages, though the verdict is for the precise sum for which it must have been rendered as punitive damages. The statute is a public act, and the court takes judicial notice of its terms, and where the allegations of the petition come within the statute, and the remedy given by the statute is supported by the evidence, the recovery may be had, such as the statute warrants, whether the statute is referred to or relied on in the petition or not. Under the Code the petition is required to state in concise language the facts constituting a cause of action, and a court awards the remedy to which under the pleadings and evidence the party is entitled. Lovee v. American Co., 160 Mo. 621; Kennedy v. Railroad, 45 Mo. 255; Reynolds v. Railroad, 85 Mo. 94; Emerson v. Railroad, 171 Mo. 165. (2) In this case, at the beginning of the trial, counsel for defendant declared that this action was grounded on the death penalty statute, but contended then that that statute did not apply to street railroads. So that both sides tried the case on the theory that the allegations of the petition in this case brought the action within the terms of the death statute as applied to steam railroads. It is here contended that

because the court allowed the jury to assess the damages instead of directing a verdict for the statutory amount of the penalty, though the verdict is for the precise amount of the penalty, the judgment is erroneous. We think this is an erroneous conception of the holding by the court in the Casey case. (3) The evidence supported each ground of negligence relied upon. (a) That by keeping a vigilant watch and stopping the car as required by the ordinance, the collision would have been avoided. (b) That the servants of defendant were running the car at a speed in violation of the ordinance. (c) It was clearly an inference that a reasonable mind could make, that a car following a wagon, on a track, as the admissions in the answer and the evidence tend to prove in this case, where the motorman could see the wagon ahead of his car at least three hundred feet, could have stopped the car in time to avoid the collision, where the evidence shows he could stop within seventy to ninety feet. This inference would be obvious to any mind. Klockenbrink v. Railroad, 172 Mo. 685. (4) The law presumes that deceased was in the exercise of ordinary care. There is not a witness produced by the defendant tending to show that he was not. The law presumes, in the absence of evidence to the contrary, that this deceased man, before driving on this track, looked to see if there was any car coming that might threaten his safety. He could see, according to the evidence, a car at least three hundred feet away. The law presumes he looked and seeing no car within that distance drove on the track and was proceeding along the track with his wagon, as the defendant alleges in the answer was the fact. That he was keeping a lookout and as soon as he realized that a car was coming he turned his wagon to get out of the track, as the evidence of Walker tends to prove, but before he could get clear this car coming down at an unlawful speed and without any effort to stop until right

upon the wagon, caused the collision. This is the natural deduction from the evidence. It is like a photograph of the facts of the collision. Buesching v. Gas Co., 73 Mo. 229; Schlereth v. Railroad, 115 Mo. 100; Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 180 Mo. 189; Eckhard v. Railroad, 190 Mo. 613; Goff v. Railroad, 199 Mo. 706; Powers v. Railroad, 202 Mo. 280. (5) The fact that plaintiff introduced evidence to show the extent of damages sustained is immaterial where, as in this case, the statute fixes the amount of damages. Schlereth v. Railroad, 115 Mo. 102; Sullivan v. Railroad, 97 Mo. 113. (6) Where the evidence shows, and the jury finds, that the plaintiff is entitled to recovery and the amount of the recovery is fixed by law, as in this case, if the court below had failed to enter the correct verdict (which it did not) this court would even reverse the case and direct judgment to be entered correctly according to the finding of the jury, and even against the finding of the jury, when the trial judge should have directed a contrary finding. Thus, where a jury found a verdict for the plaintiff and the trial judge entered a judgment on the verdict, this court has in the face of the verdict and judgment, directed a contrary judgment. Hager v. Railroad, 207 Mo. 317. In the case at bar the judgment entered was in accordance with the law. It was for the right party and for the right amount. It was sustained by the evidence, and the only thing urged against it is that the plaintiff not only proved that she was entitled to recover $5,000 under the death penalty statute, but she was required also to prove that she was damaged to that amount, and she did so prove, therefore, it is urged, because she carried both burdens successfully, she shall not have the reward the statutes gives her as a fixed sum nor any. This is a dazzling contention. (7) "The Supreme Court or Courts of Appeal shall not reverse the judgment of any court unless it shall believe that error was committed by such court against

the appellant or plaintiff in error materially affecting the merits of the action.'' R. S. 1899, sec. 865. An appellate court is concerned only with the question as to whether the right result was reached on the trial, and when this is found to be the case, the judgment under the mandate of the statute is to be affirmed. Orth v. Dorschein, 32 Mo. 368; State ex rel. v. Edwards, 78 Mo. 478; Gordon v. Eans, 97 Mo. 603; Mulperin v. Simpson, 124 Mo. 616; Joy v. Yancey, 129 Mo. 508; Heman v. Wade, 140 Mo. 347; Horembick v. Railroad, 141 Mo. 108.

GANTT, P. J.—This action was brought by the plaintiff to recover statutory damages sustained by her by reason of the killing of her husband through the negligence of the employees of the defendant while running its car on Broadway, a public street of the city of St. Louis, on the evening of February 11, 1905, while her husband was driving a team and loaded wagon south on Broadway in the city of St. Louis and about number 5200 South Broadway in said city.

The petition alleges that plaintiff was the wife of John McKenzie at the time of his death. That the defendant is and was at the times alleged a corporation by virtue of the laws of Missouri and used and operated a railway and car mentioned for the purpose of transporting persons from one point to another in the city of St. Louis as a street railway company. That at said times Broadway at the places herein mentioned was an open public street within the city of St. Louis. That on the 11th day of February, 1905, the plaintiff's said husband was driving a team attached to a wagon southward on Broadway near house number 5200 South Broadway, when defendant's servants in charge of its south-bound car on Broadway negligently and whilst running said car at a high, negligent and unlawful speed, and without giving any warning by bell or otherwise of the approach of said

car, and without using any care to watch out for vehicles on or approaching said track and in danger of being hit by said car, and without using any care to stop or control the movement of said car and prevent it from colliding with said wagon and injuring plaintiff's husband, caused and suffered said car to collide with said wagon so driven by plaintiff's husband whereby he was thrown from said wagon and so injured that he died from said injuries on the 14th day of February, 1905.

And for a further assignment of negligence the plaintiff avers that at the time of said injuries to her husband there was in force within the city of St. Louis an ordinance of said city by which it was provided that motormen of street cars should keep a vigilant watch for all vehicles either upon the defendant's track or moving towards it, and upon the first appearance of danger to said vehicle the car should be stopped within the shortest time and space possible; yet the plaintiff avers that at the time of said injury to her husband, defendant's motorman in charge of said car was failing to keep such vigilant watch and failed to stop said car within the shortest time and space possible with the means and appliances at hand, which violation of said ordinance directly contributed to cause said injuries and death of the plaintiff's husband.

And for another and further assignment of negligence, the plaintiff avers that at the time of said injuries there was in force in said city of St. Louis an ordinance of said city, by which it was provided that defendant should not run its cars at the place aforesaid at a speed in excess of fifteen miles an hour, nor at a speed dangerous to persons on the street, yet the plaintiff states that at the time of said injuries to her husband defendant's servants in charge of said car, in violation of said ordinance, were running said car in excess of fifteen miles an hour, and

at speed dangerous to persons on said street and to plaintiff's husband, which violation of said ordinance directly contributed to cause the injury and death of plaintiff's husband. Said ordinance being section 1760 and 1760a of Ordinance 21113 of the ordinances of the city of St. Louis.

That by the death of her husband, as aforesaid, the plaintiff has lost his care, maintenance and support to her damage in the sum of five thousand dollars, for which sum she prays judgment.

The answer for the defendant was as follows:

"Now, this day comes the defendant and by leave of court first had and obtained, for answer to plaintiff's petition filed herein, denies each and every allegation therein contained. For another answer and defense to plaintiff's petition, defendant says that plaintiff's husband lost his life because of his own carelessness and negligence *in driving on and along a car track with a wagon containing dynamite without looking or listening for approaching cars, when by so looking and listening the deceased might have seen or heard said approaching car in time to have avoided the collision.*

"Further answering defendant says that plaintiff's husband was killed because of his own carelessness and negligence *in driving on and along a car track at a time and place where* he well knew, or by exercising ordinary care, might have known that a collission with passing cars was imminent, because of the great difficulty motormen in charge of cars had in discerning *vehicles on the track, when deceased might have used the street outside of the tracks and driven safely along to his destination without danger from passing cars.*

"Whereupon, having fully answered, defendant asks to be hence dismissed with its costs."

The reply was a general denial. The cause was tried on October 18, 1905, in the circuit court in the

city of St. Louis, before a jury. At the beginning of the trial counsel for defendant objected to any evidence under the petition, "for the reason that it does not state facts sufficient to constitute a cause of action in this: that it is an action brought against a street railway company under the Damage Act for the death of a person other than a passenger of a street car. The act in question at the time of this accident, the 11th of February, 1905, as stated in the petition, did not cover street railway corporations, but as a matter of fact was only expected to cover them by the Act of the Legislature of 1905, becoming effective during the month of June, 1905." This objection was overruled by the court to which action of the court the defendant then and there excepted.

The evidence for the plaintiff tended to show that she was the wife of John McKenzie at the time of his death; that defendant was operating the car that injured John McKenzie and caused his death on the evening of February 11, 1905, as a carrier of passengers for hire as a street railway. That Broadway at the place where he was injured was an open public street within the city of St. Louis at the time of said injury; that said McKenzie was at the time of said injury driving a team of two horses or mules on Broadway attached to a loaded wagon. John McKenzie was a teamster in the employ of the Wiggins Ferry Company. On the 11th of February, 1905, about 6:30 o'clock p. m., a south-bound Broadway street car operated by the defendant collided with the wagon which McKenzie was driving about at the intersection of Broadway and Eixhelberger street or 5200 South Broadway, and as a result McKenzie received such injuries that he died two days afterwards. The wagon was loaded with dynamite and at the time of the collision there were three explosions. The evidence was that objects on the track at that time of night on that day could have been seen at a distance of about three

hundred feet and that a car running at fifteen miles an hour could have been stopped within eighty or ninety feet. The dynamite was in boxes until the collision occurred and then the sticks of dynamite were scattered along the track for some fifty or seventy-five feet. There was snow on the ground that night. The track of the defendant is nearly level for several blocks north where the collision took place, and was nearly straight for several blocks north and south. The answer of the defendant alleges that the husband of plaintiff lost his life because of his own negligence in driving on and along the car track with a wagon containing dynamite, without looking or listening for approaching cars, when by so looking and listening the deceased might have seen or heard the approaching car in time to have avoided the collision. And that he was killed on account of his carelessness and negligence by driving on and upon the car track at the time and place where he well knew or by the exercise of ordinary care might have known that a collision with passing cars was imminent because of the great difficulty motormen in charge of cars had in discerning vehicles on the track, when deceased might have used the street outside of the tracks and driven safely along to his destination without danger from passing cars.

On the part of the defendant it is asserted that there is no evidence tending to show in which direction the deceased was driving at the time of the collision with defendant's car, nor how long he had been on the track before the collision, or how far the car was from him when he went upon the track. To this plaintiff replies that the answer of the defendant admits the deceased was driving his wagon on and along the track of the defendant, and that as to the direction he was driving the testimony tended to show that the car struck the right hind wheel of the wagon, and that immediately after the collision the appearances of the wagon and the snow looked as if the wagon was struck

on the right hind wheel and turned around just as the wagon was driven off the track.    The wagon was thrown on the west side of the track and turned around so that the tongue of the wagon pointed north.    Walker, a witness for the plaintiff, testified that he was on the car at the time it struck the wagon, and after the collision went immediately out, and judging from the indications on the snow it looked as if the wagon was struck on the rear wheel as it was drawing out of the track.    There was no evidence tending to show that the team was injured in any way.    The snow was banked by the side of the track about two feet deep.    There was also evidence on the part of the plaintiff tending to show that no effort was made to stop until about the instant of the collision.    And there was also evidence from one of the passengers that he heard no signal given to the driver of the team.    There was also evidence tending to show that the car was running at a speed from eighteen to twenty miles an hour, in excess of the rate of speed allowed by the ordinance of the city.    Plaintiff introduced in evidence the ordinance of the city providing that no car shall be operated at a speed in excess of fifteen miles per hour and also an ordinance known as "The Vigilant Watch Ordinance," which provides that "the conductor, motorman, gripman, driver or any other person in charge of such car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such person or vehicle, the car shall be stopped in the shortest time and space possible."

On the part of the defendant the only evidence offered were sections 16, 18, 19 and 22 of article 3 of the general ordinances of St. Louis, providing for the keeping of giant powder, dynamite and other explosives within the limits of the city exceeding thirty pounds of such explosives and prohibiting any person from carrying gunpowder, giant powder or blast-

ing powder on any vehicle in any part of the city, unless the same should be secured in kegs, boxes or canisters sufficiently closed to prevent the grains thereof from falling out, and unless the same was covered with sheets of canvas or other cloth, and making the same a misdemeanor. And also sub-section 8 of section 1760 of the general ordinances, which provides ''that the cars shall be entitled to the track, and any vehicle upon the track shall turn out when cars come up so as to leave the track unobstructed, and the driver of any vehicle refusing to do so when requested by the motorman, gripman or driver, shall be guilty of a misdemeanor.''

I.    That the allegations of the petition state a case which brings it within the purview of section 2864, Revised Statutes 1899, to-wit, for the death of a person other than a passenger by reason of the negligence of a servant in running a public conveyance, we think is too obvious for discussion. That such was the understanding of counsel for defendant is made evident by its objection to any testimony under the petition, for the reason that section 2864 did not apply to street railways and that street railways were not liable for such death until the Act of February 11, 1905. That section 2864 did and does apply to street railways, was settled by the decision in Higgins v. Railroad, 197 Mo. 300, and McQuade v. Railroad, 200 Mo. l. c. 156. But notwithstanding it was the view of both plaintiff and defendant that the facts alleged stated a case under section 2864, inasmuch as the petition alleged that by the death of her husband plaintiff lost his care, maintenance and support to her damage in the sum of five thousand dollars, for which she prayed judgment, and the court admitted evidence as to the number and age of the children of deceased, and to the amount of his wages, and then instructed the jury that they should assess her damages at such sum not exceeding five

thousand dollars as would fairly compensate her for her loss by reason of his death, defendant contends this cause should be reversed although the jury awarded her five thousand dollars, the exact amount she was entitled to recover, if anything, by reason of her husband's death.

In support of this contention the defendant relies upon Casey v. Railroad, 205 Mo. 721, in which the plaintiff after alleging the killing of her minor son by a street car of the defendant and the negligence of the defendant's servant in the management of the car, concluded with a prayer for the sum of $4,500.

The circuit court instructed the jury that if they should find for the plaintiffs they should assess their damages at $4,500 and there was a verdict for the plaintiffs for that sum and judgment accordingly. The cause was sent to this court on account of the conflict of opinion between the two Courts of Appeals. In that case, this court in Banc said: "The vital question in the case is, can the plaintiffs avail themselves of the right of action given in section 2864, Revised Statutes 1899, and yet by their petition limit their recovery to an amount less than the sum of five thousand dollars, which that section specifies that defendant 'shall forfeit and pay for every person or passenger so dying?' The question is one of more than private personal interest to the party in this suit, because it involves the question of the right of the plaintiff in such a suit to choose between the Court of Appeals and the Supreme Court, to which an appeal in the case may be taken." After approving the opinion of the St. Louis Court of Appeals in the main in Casey v. Railroad, 116 Mo. App. 235, the following expression in that opinion was not approved: "A party aggrieved by the wrongful death, strictly under the penal section, can, if he sees fit, sue for and recover under the third and fourth sections as well as under the penal section, and his recovery would be not exceeding five

thousand dollars, as might be fair and just.'' It was said that the petition in that cause was defective, under section 2864, because it failed to sue for the penalty in that section prescribed, and therefore the judgment attempted to be bottomed on that section must be reversed, but it is further said that although the petition was defective in the part above pointed out, it could not be said that it stated no cause of action under section 2864, because the fact stated would constitute a cause of action if the purpose of suit was to recover the penalty described in that section, and accordingly the judgment was reversed and plaintiffs given an opportunity to amend their petition in that particular. Subsequently in King v. Railroad, 130 Mo. App. 368, the ruling in the Casey case was followed by the St. Louis Court of Appeals. In that case, there was a verdict and judgment for four thousand dollars. In that case the petition charged a negligent failure to provide regulations for the management of cars at the place where the accident occurred, so as to protect employees; failure to give warning to the deceased, who was pinioned and killed between cars which were being coupled, that a coupling was to be made; failing to instruct the plaintiff of the danger of passing along the walk where the accident occurred, though many trains stood and were moved about there, and failure to have any appliances or system to give warnings when couplings were about to be made. The plaintiff sought to avoid the ruling in the Casey case on the ground that these averments showed the petition counted on other negligence besides that which occurred in moving the train that killed the deceased. But the Court of Appeals said that both the counsel and court tried the case on the theory that plaintiff based her right to recovery on the negligence in running and conducting the locomotive and train, but was entitled to recover any sum the jury might award not exceeding five thousand dollars. And speaking of the instructions, the court said

there could be no doubt that the case counted on section 2864, and hence the instruction allowing the jury to award an amount not to exceed five thousand dollars was erroneous. Now in this case, as already said, the negligence stated in the petition was for the negligent running of the car, and brought it clearly within section 2864. Under the code, the petition is required to state in concise language the facts constituting a cause of action, and as the statute is a public act it was unnecessary to refer to the section by number. [Lore v. American Mfg. Co., 160 Mo. l. c. 621; Kennayde v. Railroad, 45 Mo. 255; Emerson v. Railroad, 111 Mo. l. c. 165.] The jury having returned a verdict of five thousand dollars, the exact amount of the penalty given by section 2864, the question now is whether the action of the court in instructing the jury that they might find damages not exceeding five thousand dollars was error, and appellant contends that, as the jury did return a verdict for the precise amount of the penalty, therefore this court must reverse this judgment on this ground. It is to be observed that in the Casey case the plaintiffs only prayed for damages in the sum of $4,500, and in the King case, while the plaintiff asked judgment for five thousand dollars, the jury returned a verdict for four thousand dollars. In the Casey case it was said that to permit the plaintiff to avail themselves of the right of action given in section 2864, and at the same time to limit their recovery to less than five thousand dollars, involved the question of the right of the plaintiffs in such suit to choose between the Court of Appeals and this court as to which an appeal in the case would be taken. As in the King case, so in this case, we have no doubt whatever that both sides tried the case on the theory that the allegations of the petition brought the action within the terms of section 2864. It is moreover plain that the plaintiff prayed judgment for five thousand dollars. Does the

fact that the plaintiff in her prayer alleges that her damages of five thousand dollars resulted from the loss of the care, maintenance and support of her husband render the petition bad after verdict? We are of the opinion that those averments did not. The facts alleged in the petition show that it was framed expressly upon this statute and the damages prayed for are the exact amount given by that statute and the words "care, maintenance and support" may after verdict be rejected as surplusage.

Again, does the fact that the court instructed the jury that they could assess plaintiff's damage at a sum not exceeding five thousand dollars require a reversal of the judgment when the jury awarded plaintiff five thousand dollars, the amount of the penalty given by the statute? Certainly it does not fall within the reasoning of the Casey case to the extent that it deprived the defendant of its appeal to this court.

The judgment was rendered for the amount which the law prescribed. If no other reversible error intervened, it was for the right party and for the right amount. How can it be said to have been injurious to the defendant when the only thing urged against it is that the plaintiff not only proved that she was entitled to recover five thousand dollars under the penalty statute, but assumed the burden of establishing to the jury that she was in fact damaged to that amount and carried both burdens successfully? To reverse this case upon that instruction alone when the petition and evidence made out a case under section 2864, and the verdict and judgment was for the exact amount provided by the statute, we think would be sticking in the bark and substituting form for substance. In our opinion, the judgment should not be reversed for the giving of that instruction upon the state of the record before us. And this conclusion we do not think militates in any way against the reasoning of the court in the Casey case. The evidence as to the value of her

husband's services and .the number of minor children left surviving, is no ground for reversing the judgment, because it in no manner increased the damages beyond the amount the plaintiff was entitled to recover, if anything, and it was so held in Schlereth v. Railroad, 115 Mo. l. c. 102.

II. Was there a sufficient prima-facie case to submit to the jury, and was there substantial evidence to support the verdict? Learned counsel for defendant insists that in order to have warranted a submission of the case to the jury on the theory of the violation of the Vigilant Watch Ordinance, it was incumbent upon the plaintiff to prove four facts: First, the speed at which the car was traveling; second, the distance the car was from deceased, at the time he drove on the track or so near thereto as to be in a position of danger; third, the distance at which the wagon on or near the track could be seen; fourth, the distance within which the car, traveling at the speed it was, could have been stopped.

It is conceded that the proofs tended to show that the car was running at the rate of eighteen to twenty miles an hour; that a man or wagon on the track could have been seen from a point three hundred feet north of the wagon; that the street was practically level for several blocks in this neighborhood; that a car traveling at a rate of fifteen miles an hour could have been brought to a full stop in seventy or ninety feet. Thus three of the conditions precedent confessedly were supported by the testimony offered by the plaintiff, with no effort on the part of the defendant to contradict the same, but it is insisted that there is not a scintilla of evidence tending to prove the distance the car was from the deceased at the time he drove upon or near the track. It is fundamental that what is admitted by the pleadings is unnecessary to be shown by the testimony. Recurring now to the defendant's answer,

it is to be observed that the defendant pleads that the plaintiff's husband lost his life because of his own carelessness and negligence *in driving on and along a car track without looking and listening for approaching cars, when, by so doing, the deceased might have seen or heard said approaching car in time to have avoided the collision.* Thus it was a conceded fact that the plaintiff's husband was driving along the track and also that if he had looked and listened he had time to have gotten his loaded wagon off of the track in time to have avoided the collision. If this was true, and it must be accepted as true, as a solemn admission by the defendant against its own interest, then it follows by the same token that if the driver of the team could have seen the car approaching from the rear in time to have driven his loaded wagon off of the track in time to have avoided the collision, the motorman, whose view was entirely unobstructed for at least a block, and who could have seen the wagon three hundred feet or more, and whose duty it was to be on the lookout for it, was shown to have seen the wagon on the track in time to have avoided striking it with his car. So that, in our opinion, the assumption of the learned counsel for the defendant that there was no evidence that the wagon was on the track a sufficient length of time to have required the motorman to have seen it and taken steps to avoid striking it, is not tenable, but on the contrary is established by the defendant's own answer. In addition to this the evidence tended to show that no signal was given by the motorman, and no evidence on the part of the defendant to show that it was given until about the instant of the collision, and that the car was running at a speed of from eighteen to twenty miles an hour, a speed in excess of the highest rate allowed by the ordinance. It is to be borne in mind in this connection that the deceased was not a trespasser merely because he was driving upon the track. The relative rights of citizens and street car

companies in the streets on which they have a franchise to lay their tracks and operate their cars, is well settled in this State. In Oates v. Railroad, 168 Mo. l. c. 544, it was said by this court: "Both have a right to use the street, but neither has an exclusive right. . . . . Because a street car carries more people than any other kind of conveyance or because it is authorized to run more rapidly than a vehicle can ordinarily be legally driven, or because the rush and restlessness of the age make unreasonable demands for more rapid transit along the crowded thoroughfares of populous cities, it does not follow that a street car can be run in disregard of the rights of persons traveling by other means, nor that a street car company is exempt from the common-law duty of every one to exercise ordinary care, nor that it is only liable where its agents act wantonly, maliciously and heedlessly." And in Schafstette v. Railroad, 175 Mo. l. c. 154, it was said: "It is not true as a matter of law, and prima-facie cannot be true as a matter of fact, that it is negligence for a citizen to cross or drive upon and along a street car track when a street car is five hundred feet away, although it may be coming in the same direction, and running at the speed of five or ten or even more miles an hour, when the track is straight and the operator of the car can easily and plainly see that such person is in such a position. In such case, particularly where the citizen turns onto the track and drives upon or close to it, with his back to the approaching car, it is the duty of the operator to check the car and avoid the accident, and if a collision occurs, it is prima-facie if not altogether owing to the negligence of the operator of the car." And this same doctrine has been reannounced in Latson v. Railroad, 192 Mo. 457, 458, and the language of Judge MARSHALL in Oates v. Railroad, 168 Mo. l. c. 544, was again quoted with approval in Klockenbrink v. Railroad, 172 Mo. l. c. 689.

The deceased, then, not being a trespasser and hav-

ing a right to drive his team upon the tracks of the defendant, the further question arises as to his contributory negligence in not driving off of the track in time to have avoided the collision.   The evidence tended to show that he was in the act of leaving the track and had gotten so far off that the car only struck the right hind wheel of his wagon.   As the plaintiff's husband is dead and could not testify in this cause, of course we do not have his version as to when he first discovered the approach of the car behind him.   But the evidence of the other witnesses, as already said, discloses that he was attempting to leave the track, however he came to be upon it.   It may have been that the proximity of other teams and wagons had caused him to drive his team upon the track, as he had a right to do under such circumstances, but it is plain that he was endeavoring to get off of it.   The law presumes in the absence of any evidence to the contrary, and there is none in this case, that the deceased, McKenzie, looked to see if there was any car coming that might threaten his safety.   He could have been seen according to the evidence, by the motorman, at least three hundred feet away.   The law presumes in the absence of evidence to the contrary that he was observing ordinary care for his own safety, and that, when he realized that the car was coming, he turned his wagon to get out of the track, but before he cleared the track, the car of the defendant, which the evidence tends to show was running at an unlawful rate of speed and without any warning to him, struck his wagon and precipitated him from his seat and caused his injuries.   [Buesching v. Gas Light Co., 73 Mo. 229; Weller v. Railroad, 164 Mo. l. c. 199; Riska v. Railroad, 180 Mo. 188, 189; Eckhard v. Railroad, 190 Mo. l. c. 613; Goff v. Railroad, 199 Mo. l. c. 706.]

Keeping in view then the testimony as to the excessive rate of speed, the failure to give a signal of the approach of the car from the rear, and the fact

of the car striking only the rear hind wheel of the wagon as it was turning to leave the track, and, according to the plaintiff, the presumption that her husband was in the exercise of ordinary care in driving upon the track and in his effort to turn out on the west side, together with the admission of the defendant in its answer that the plaintiff's husband was driving on the track and had time to have seen the defendant's car approaching from the rear in time to have driven from the track and avoided the collision, and the fact that the track was straight and the view unobstructed for at least three hundred feet, we think it was a legitimate inference for the jury to draw, in the absence of any countervailing testimony, that the motorman saw or by the exercise of ordinary care could have seen plaintiff's husband's team upon the track, had he kept that lookout which the ordinance required for persons on or near the track, and that he failed to do so and that the injuries to plaintiff's husband were the result of his failure to observe the Vigilant Watch Ordinance, and that, therefore, the demurrer to the evidence was properly overruled, and the facts justified the submission of the case to the jury, and are sufficient to sustain the verdict. In our opinion there is no reversible error in the record, and the judgment of the circuit court should be and is affirmed.

*Fox* and *Burgess, JJ.,* concur.