## IRWIN H. PIPES v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division One, March 30, 1916.

1. **PLEADING: Personal Injuries: Action Given by Statute.** It is not necessary that the statute of this State or of Congress which gives to plaintiff his cause of action be pleaded; all that is required is that the facts which bring the case within them be stated in the petition. The laws of Congress are not foreign laws that must be pleaded or proven in this State.

2. **INTERSTATE COMMERCE: Personal Injuries: Jurisdiction of State Court.** If the petition states the facts which, under the statute of this State and the statute of Congress, constitute a cause of action for personal injuries due to defendant's negligence, the court should refuse an instruction directing the jury that if the car which the crew was attempting to couple at the time plaintiff was injured was employed in interstate commerce, their verdict must be for defendant; for, the State courts have jurisdiction to enforce the liability created by those statutes for such injuries so inflicted.

267 Mo 25

3. **EVIDENCE: Cause of Stopping Cars.** Where plaintiff fell from the running board of a car and was injured, when the drag of sixteen cars, which the crew were attempting to couple with other loose cars, suddenly stopped, it is error to permit plaintiff to testify what caused them to stop and deny that right to defendant—where the cause of the sudden stop is the vital issue in the case.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney,* Judge.

REVERSED AND REMANDED.

*White, Hackney & Lyons* for appellant.

(1) The court erred in permitting plaintiff to testify that in his opinion undoubtedly the brakes were set on the engine thereby causing the drag to stop suddenly. Permitting him to answer this question and give his conclusion of the most vital fact in issue in the case was glaringly prejudicial to the defendant. Landers v. Railroad, 134 Mo. App. 87; Taylor v. Railroad, 185 Mo. 255; Castanie v. Railroad, 249 Mo. 192; Glasgow v. Railroad, 191 Mo. 364; Roscoe v. Met. St. Ry., 202 Mo. 595; Gutridge v. Railroad, 94 Mo. 472; Nash v. Dowling, 93 Mo. App. 164; Wesner v. Railroad, 177 Mo. App. 122; 6 Thompson on Negligence, p. 684. (2) But in any event, and on any theory, the court, after having permitted the plaintiff to give his opinion as to what stopped the drag, when the plaintiff was not in a position to see what actually occurred, should have permitted Hogan, of like experience with the plaintiff and who had occupied a position enabling him to tell what stopped the drag, to give an opinion on the same matter on which the plaintiff had given his opinion. If Hogan's testimony was inadmissible then plaintiff's testimony was also inadmissible. (3) The plaintiff did not bring his action for damages under the Federal Employers' Liability Act, but sued under the State law and was not entitled to recover. When it appeared

from the evidence that the plaintiff and the defendant were, at the time of the accident, engaged in interstate commerce, the State law was not applicable to the transaction and the rights, duties and liabilities of the parties, but the Federal Employers' Liability Act having superseded the State law in such a case was alone applicable, and this completely barred the plaintiff's right to recover under the State law.  The case pleaded by the plaintiff, to-wit, one under the State law was, therefore, disproved, and the case proved, to-wit, one under the Federal Employers' Liability Act, was not pleaded, hence there could be no recovery for the plaintiff, and the jury should have been so instructed.  Moliter v. Railroad, 180 Mo. App. 84; Railroad v. Seale, 229 U. S. 156; Railroad v. Slavin, 236 U. S. 454.

*Percy C. Field* and *Clarence S. Palmer* for respondent.

(1) The testimony of the plaintiff as to the cause of the sudden stopping of the train was proper.  He was stating a fact made known to him by his trained senses.  Railroad v. Johnson, 38 Ga. 409; Wigmore on Evidence, sec. 659; Hunter v. Halsley, 98 Mo. App. 621; Smith v. Railroad, 34 Nova Scotia, 22; Bryce v. Railroad, 129 Iowa, 342.  (2) There was no error in the ruling of the trial court on the admissibility of the testimony of the witness Hogan.  He testified to all the facts about which he was asked.  (3) The rights of the parties to this action were exactly the same under the facts, whether the case was controlled by the State or Federal law.  By no possibility were the rights of the appellant materially affected by the rulings of the trial court on this question, and there should therefore be no reversal.  Railroad v. Wulf, 226 U. S. 570; Railroad v. Slavin, 236 U. S. 306; Sec. 2082, R. S. 1909; Railroad v. Yurkonis, 220 Fed. 429; Railroad v. Hayes, 234 U. S. 86; Hogarty v. Railroad, 245 Pa. St. 443;

Railroad v. Nelson, 212 Fed. 69; McIntosh v. Railroad, 182 Mo. App. 288.

BROWN, C.—This is an action for personal injury suffered by the plaintiff in the course of his employment as a switchman in defendant's yard at Kansas City. Verdict and judgment for $8000, from which the defendant has taken this appeal.

The petition states, in substance, that the plaintiff was a member of a switching crew employed by defendant in said yard. On June 12, 1914, he, with the crew, which consisted of a foreman, an engineer and fireman who operated the engine, and himself and another switchman, was engaged in handling cars in said yard; that in doing this work the engine was attached to the east end of a drag consisting of sixteen freight cars, for the purpose of shoving it west on one of the tracks to couple it to three freight cars standing on said track, and shoving the drag so made up to a gravity lead at the west end of the yard; that in executing the movement it was his duty to get on the top of the cars and pass along the running boards to the head of the drag, or farthest car from the engine; that in pursuance of this duty he mounted one of the cars, climbed to the top, and walked west along the footboard; that while he was doing this the last car had been apparently coupled to the three that were standing on the track so that there were nineteen cars in the drag; that while plaintiff was still walking along the footboard on the top of the sixteenth car toward the head of the drag, and was at the west end of the sixteenth car, the fireman, who was driving said engine, without any signal to stop, applied the brakes to the engine and caused it to stop suddenly and with a jerk, so that the three front cars which had not been securely coupled to the one on which he was walking separated from it and

plaintiff was thrown from the top of the car to the track below and injured.

It specifies particularly that the "defendant was negligent, in that, the said fireman carelessly and negligently caused said engine and drag to stop with a jerk, when no signal had been given to stop, when the defendant, by and through its agents and servants, in charge of said engine and drag, knew, or by the exercise of ordinary care, could have known that plaintiff was walking upon the running board of said cars of said drag and would be jerked off of said drag and injured by the stopping of said engine and drag with a jerk when no signal to stop had been given;" and that the agents and servants of defendant in charge of said engine and drag carelessly and negligently pushed it along without the three head cars being securely coupled, so that they would separate from the drag being stopped with a jerk, when they knew or by the exercise of ordinary care could have known of the dangerous position of plaintiff and that he was relying on the car being securely coupled.

The answer consisted of a general denial and the ordinary general plea of contributory negligence.

There was no suggestion in any of the pleadings that the employment of the defendant at the time of the injury related in any way to commerce between the States.

There was evidence tending to prove that these three cars had been delivered at the yard that day by the Chicago, Milwaukee & St. Paul Railway Company, which had brought them from Laredo, Missouri, and that one of them had been delivered at Laredo that morning from Ottumwa, Iowa.

There was also evidence tending to prove the allegations of the petition, unless there was a failure with respect to setting the brakes. On this subject the plaintiff testified as follows: "I was standing there looking

back over my shoulder and just at the time I was look-ing back the stop came, and the stop was so sudden that undoubtedly the stop was made by the applica-tion of the brakes, or else.—'' At this point he was interrupted by an objection from defendant's attor-ney, who immediately moved to strike out the state-ment of the cause of the stopping, on the ground that it was mere speculation. This was overruled by the court and the witness continued, stating that the jerk came with such an abrupt stop that in his estimation or knowledge the brakes were undoubtedly set or the en-gine reversed—that it was made by the stopping of the engine. The defendant moved to strike out this portion of the answer as being a mere opinion. The objection was overruled by the court and to this action in admit-ting this evidence and refusing to strike it out the de-fendant excepted.

The defendant introduced Mr. Hogan, the other switchman of the crew, who testified that at the time Mr. Pipes fell from the top of the car he (Hogan) was standing at about the middle of the original drag of sixteen cars, transmitting to the engines such signals as were given by the foreman, who was at the place where the coupling was to be done. During his exami-nation by Mr. Hackney for defendant (Mr. Field repre-senting the plaintiff), the following took place:

''Q. Could you tell what if anything caused the sixteen cars to stop?

''Mr. Field: Objected to as calling for a conclu-sion of the witness.

''Q. Could you see what caused it?

''Mr. Field: I suppose that is a conclusion. Let him state what he did see.

''The objection was by the court sustained. To which ruling of the court the defendant then and there duly excepted.

"Mr. Hackney: I offer to show by this witness that the cars stopped in consequence of striking the three cars and not from the application of the brake on the engine.

"Mr. Palmer: Objected to for the reason that it would be a mere conclusion of the witness unless the witness could see what was being done by the engineer on the engine, which he testifies was eight cars away.

"The objection was by the court sustained. To which ruling of the court the defendant then and there duly excepted."

The defendant, at the close of plaintiff's evidence and again at the close of all the evidence, asked the court to instruct the jury to find a verdict in its favor, which it refused, and defendant duly excepted. It also asked the court to instruct that if the plaintiff was negligent, and his negligence contributed in any way to his injury, they should find for the defendant. This was also refused and exception taken. It also asked the court to instruct that if the jury should find from the evidence that the east car of the three to which the crew were trying to couple the drag "was U R T car No. 3832; that said car was loaded, and had been transported in such loaded condition by the Chicago, Milwaukee & St. Paul Railway Company from Ottumwa, Iowa, to Kansas City, Missouri, and there delivered to the Missouri Pacific Railway Company for further transportation or delivery, then regardless of the other defenses in this case, the plaintiff is not entitled to recover and your verdict must be for the defendant." This was refused, to which defendant excepted. The cause was then submitted to the jury upon the sole theory, affirmatively expressed in substance in plaintiff's instructions and negatively in those given for defendant, that the liability of defendant depended upon the fact that after the drag of sixteen cars struck the east car of the three to which they were attempting

to couple it, and while the engine was pushing the nineteen cars westward, the engineer or fireman operating it, without any signal to do so, suddenly stopped "with a jerk," letting the three cars, which had failed to couple, pass on, and throwing the defendant from the west end of the sixteenth car on which he was walking.

The appellant assigns for error the action of the court in refusing its instruction intended to direct the jury that if the car to which the crew was attempting to couple was, at the time, employed in interstate commerce, their verdict must be for the defendant. The instruction is without foundation. This is a common-law action excepting in so far as it is modified by the terms of section 5434 of the Revised Statutes of 1909 of Missouri, and by section one of the Act of April 22, 1908 (35 U. S. Statutes at Large, p. 65). The former is as follows: "Every railroad corporation owning or operating a railroad in this State shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof: Provided, that it may be shown in defense that the person injured was guilty of negligence contributing as a proximate cause to produce the injury." The latter provides that "every common carrier by railroad while engaged in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier."

These statutes constitute the law of the State with reference to the liability of railroad companies to their servants for injuries inflicted upon them by fellow-servants in the course of the common employment, and

*Margin note:* Jurisdiction: Interstate Commerce.

the State courts of general jurisdiction have cognizance of suits to enforce the liability created by them. This jurisdiction must be exercised in accordance with the procedure prescribed by the statutes of the State. The procedure provides (Sec. 1794, R. S. 1909) that the petition shall contain a plain and concise statement of the facts constituting the cause of action and the relief to which the plaintiff may suppose himself entitled. Its sufficiency is judged by the answer to the question, do these facts entitle the plaintiff to relief under the laws in force in this State, and in considering it, the general laws, whether State or Federal, must be considered. It is not necessary that these laws be mentioned or in any way identified in the pleading. It is only required to state the facts which bring the case within them. [Emerson v. Railway Co., 111 Mo. 161, 165; Lore v. Manufacturing Co., 160 Mo. 608, 621; McKenzie v. United Railways Co., 216 Mo. 1, 17; Railway Co. v. Wulf, 226 U. S. 570, 576; Railway Co. v. Gray, 237 U. S. 399, 401.] The laws of Congress are not foreign laws that must be pleaded and proven in the courts of this State. Had the answer in this case pleaded that the injury was suffered while the defendant and its switching crew were engaged in commerce between the States, it would have been no defense, but merely the statement of an immaterial fact attending the creation of the liability, and to have proven it without pleading could have no greater effect.

Since the trial of this case, the Supreme Court of the United States, which is the paramount authority upon the construction of the Federal laws, has decided this question in Railway v. Gray, supra. In doing so it said: "There are differences and similarities between the Wisconsin and Federal statutes, but we do not perceive that there is any difference that made the railway company's position worse if tried on the hypothesis that the State law governed." In this case

there is no suggestion of any such difference in the application of these statutes: [See, also, C. R. I. & P. Ry. Co. v. Wright, advance sheets U. S. Sup. Ct. Reports, Feb. 15, 1916, p. 185.]

The only case to which our attention has been directed which tends to support the theory of defendant is Moliter v. Railroad, 180 Mo. App. 84. In that case the Kansas City Court of Appeals held that actions upon the liability created by the State and Federal statutes were so essentially different in their nature that they cannot be substituted for each other by amendment to the petition. This was probably a mere inadvertence, and ought not to be followed.

II. The next question presented will be simplified by bearing in mind the facts upon which the plaintiff depends for his recovery. He was thrown from the

Evidence.    top of a freight car over the front end, falling upon the track. The car from which he fell was the last or front car of a drag of sixteen which had been shoved westward to be coupled to the east one of three cars standing upon the same track. The moving car, upon the top of which he was walking forward for the purpose of stepping upon the running board of the other car as soon as the coupling should be made, struck it, but the automatic couplers failed to work, so they were not locked together. Up to this point there is no difference between the plaintiff and defendant. Here, however, their theories diverge. The plaintiff says that the sixteenth car upon which he stood continued westward, shoving the three before it when the engineer, without any signal therefor, either by the application of the brakes, or by reversing the movement of the engine, suddenly stopped it with a jerk, and the three cars passed on, leaving a space in which the plaintiff fell to the track. On the other hand, the defendant claims that the sixteen cars stopped by reason of their impact against the three, which, not

having coupled, moved away from them by the force of the impact, leaving the space into which plaintiff was thrown by the sudden stop.

The jury were instructed that if they should believe the former theory they must find for the plaintiff; if the latter, they were to find for the defendant. During the occurrences that resulted in the accident Mr. Lonergan, the foreman of the crew, stood at the east end of the three cars, where the coupling was to take place, directing the movement of the engine by signalling with his hands. Mr. Hogan, a switchman, stood about half way between Mr. Lonergan and the engine, for the purpose of transmitting the signals from the former to the latter by repeating them.

Upon the trial it was admitted that Mr. Lonergan was not available as a witness to either party. The plaintiff testified: ''I was standing there looking back over my shoulder and just at the time I was looking back the stop came, and the stop was so sudden that undoubtedly the stop was made by the application of the brakes.'' At this point he was interrupted by defendant's attorney, who objected, and moved to strike out the statement on the ground that it was mere speculation. It was overruled by the court and the witness was permitted to continue, repeating this statement in substance: stating that the jerk came with such an abrupt stop that in his estimation or knowledge the brakes were undoubtedly set or the engine reversed— that it was made by the stop of the engine. The defendant moved to strike out this additional statement as being a mere opinion. The court refused and defendant excepted. These matters are assigned for error.

The defendant introduced Mr. Hogan and asked him if he could tell what, if anything, caused the cars to stop—if he could see what caused it? The plaintiff objected on the ground that the question called for the conclusion of the witness. This objection was sus-

tained and defendant excepted. The defendant's counsel then said: "I offer to show by this witness that the cars stopped in consequence of striking the three cars and not from the application of the brakes on the engine." To this the plaintiff objected for the reason that it would be a mere conclusion of the witness, unless he could see what was being done on the engine, eight cars away. The objection was sustained and defendant excepted. These matters are also assigned as error. It will be seen that the question raised upon the admission and exclusion of this testimony was of the most vital importance. It seems to us, that the same reasons upon which the admissibility of the testimony of plaintiff must rest would apply with equal force in favor of the testimony offered through Mr. Hogan. Both were experienced railroad men, and as such, must be assumed to have been equally competent to draw inferences from the facts which surrounded them relating to the operation in which they were engaged. The plaintiff was sixteen cars away from the engine when it stopped, and it is not suggested that he was able to see anything that was taking place in the cab. In fact he places his knowledge upon the nature of the stop alone.

Of course he could hear the rattle of drawbars and couplers as the eight or ten feet of slack of which he testifies were taken up or payed out, and felt the final jerk attending the change from movement to absolute rest. If this was not sufficient to indicate to his trained senses the cause of the stop the admission of his testimony was vital error. If he was qualified to speak in that respect so that the testimony was admissible, Mr. Hogan, a man of equal experience and intelligence, must have been equally qualified. He stood half way between plaintiff and the engine, his duty requiring him to watch Mr. Lonergan, who stood at the place

Pipes v. Railroad.

where the impact must occur, and in communication, by sight, with the man controlling the engine, to whom he must be prepared to signal with his hands, and who must be in plain sight of him to receive such signals. His instincts and perceptions were trained like those of the plaintiff. It seems impossible under these circumstances that he should not have been as well prepared as the plaintiff to speak of the cause of the stop and as to whether it originated from force applied at the engine or at the front end of the drag. We think it was error to refuse to permit him to say whether or not he could, under the circumstances, tell what caused these sixteen cars to stop and whether or not he could see what caused it. If he could, he was perfectly competent to state, as the plaintiff stated, the cause, and could be asked what it was, for the purpose of proving that it was from the impact against the three cars ahead of it, and not from the application of the brakes. We think that the court committed prejudicial error in refusing to permit him to be so examined. It follows that the judgment of the Jackson Circuit Court must be reversed and the cause remanded. *Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.