# ELIZABETH KINLEN v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

**Division One, January 14, 1909.**

1. **NEGLIGENCE: Buggy on Track: Demurrer.** Defendant's street car was running at a speed of fifteen miles an hour, on a slight upgrade track, in a populous part of the city, and could have been stopped with reasonable safety in forty-five to sixty feet. The driver of a buggy, in attempting to pass some wagons, drove on the track for a distance of two hundred feet, and having passed them, attempted to drive off but the rails were a little higher than the surface of the street, and the hind wheel slid along the outer one, about the middle of the block. At the time it began to slide the car was approaching from behind at a distance of one hundred to one hundred and twenty-five feet from the buggy, and had not stopped at the last street crossing, and the driver of the buggy did not know of its approach, and no attempt was made to stop the car until about the time it struck the buggy, which resulted in the driver's death. There was evidence that the motorman was looking at painters painting a sign on one side of the street. *Held*, that a demurrer to the evidence, admitting as it does every fact which the testimony tends to prove and every inference that may reasonably be drawn therefrom, and the law imposing on the motorman the duty to use reasonable care to stop the car or slacken its speed when by the exercise of ordinary care he saw or could have seen the buggy wheel hanging to and sliding along the rail, was properly overruled.

2. ————: ————: **Right to Street.** The streets of cities are public thoroughfares upon which all persons have a right to travel, but neither a pedestrian, a street car, nor a vehicle drawn by horses, has the right to the exclusive use thereof. Their rights are relative and all must exercise reasonable care not to injure each other. A motorman in charge of a street car is not required to stop it every time a pedestrian, horse or vehicle crosses the track in front of him, yet in populous cities where the streets are crowded ordinary care requires him to keep a vigilant watch for those who, for any cause, are liable to be struck by the approaching car.

3. ————: ————: **Instruction: Assumption of Issuable Fact.** The instruction told the jury that "if you believe and find from the evidence that plaintiff's husband was at the time and place

in question in a position of imminent peril of being struck by the car mentioned in evidence, by reason of the fact that the buggy in which he was seated was upon or approaching the track upon which said car was running," etc. *Held*, that the instruction did not assume that deceased was in danger by simply driving on or being near the track, but required the jury to find that fact in the light of all the facts and circumstances stated in the instruction.

4. ——: ——: ——: **Attendant Circumstances: Ringing Bell: Speed of Car.** In a suit based on the defendant railroad's negligence in not stopping a car approaching from behind in time to avoid striking a buggy which was trying to get off of the track, it is proper for the jury to consider, in connection with all the other facts and circumstances shown by the evidence, the facts that the bell was not rung and that the car was being run at a speed of fifteen miles an hour; and defendant's instructions withdrawing those matters from the consideration of the jury should be refused.

5. ——: ——: ——: **Knowingly. Driving in Front of Car.** An instruction which tells the jury that "if the driver of a buggy knowingly drove across the tracks in such close proximity to the approaching car as to be struck before he could cross, their verdict should be for defendant," is correct as an abstract proposition of the law, but it should not be given if there is no evidence that he knew of the car's approach. But its refusal cannot be justified by the "humanitarian doctrine."

6. ——: ——: ——: ——: **Humanitarian Doctrine.** The humanitarian doctrine does not permit a recovery where the pedestrian or the driver of a vehicle knowingly attempts to cross the track in close proximity to an approaching car when he knows he will not have time to cross in safety. And where there is evidence that he did know that the car was approaching and so knowing he attempted to cross in such close proximity in front of it that he could not cross in safety, an instruction telling the jury that, if they found such facts to exist, they should find for defendant, should be given. But it is not error to refuse such an instruction where there is no evidence that he knew of the car's approach.

7. ——: ——: ——: **Error Invited by Appellant.** A party cannot complain of an instruction in harmony with one asked by himself. Where defendant requests the trial court to make a ruling and that request is granted, such action of the court cannot be complained of, even though it be erroneous. So that, where defendant asked an instruction withdrawing from the consideration of the jury the speed at which the car was being run at the time it struck a buggy trying to cross the

Kinlen v. Railroad.

track, and the court refused that instruction, but gave one telling the jury that they were not to consider the excessive rate of speed, defendant cannot complain that the instruction given did not tell the jury that the speed of the car was to be considered in determining the distance within which the car could have been stopped and considered in that way only. The court's instruction was erroneous, because it was proper for the jury to take into consideration the speed of the car, in connection with all the other facts and circumstances, but defendant cannot complain, because it invited the error by asking the refused instruction telling the jury not to consider the speed of the car.

8. ———: ———: ———: **Given at Prior Trial: No Exceptions.** At a prior trial defendant asked certain instructions which were modified by the court and given as modified, and defendant excepted to the modification. At the last trial defendant asked the same instructions in their modified form, and the court gave them without anything having been said by either court or counsel concerning their modification. *Held*, that there was no objection made or exception saved to the action of the court in giving the instructions.

9. **EXPERT: Qualification: Street Car Conductor.** A witness who was familiar with the location and conditions of the accident and of the kind of car that struck the traveller, and who had been a motorman or conductor for five or six years, and during all that time had constantly run, stopped and started similar cars, is qualified as an expert to testify in what distance the car could be stopped with safety to the passengers.

10. **HYPOTHETICAL QUESTION: No Specific Objection.** It is not error to overrule an objection to a hypothetical question to the effect that it omits certain necessary facts shown by the evidence and includes other facts not so shown, where counsel, when requested, declines to point out what facts are improperly included and what omitted. There should be no masked batteries in the trial of a lawsuit. No objection to any kind of question is of any validity unless specific.

11. ———: **Assuming Car to be in Proper Condition.** Where the purpose of the hypothetical question is to ascertain in what distance a street car could have been stopped, it is not error to assume that the car and its appliances were in good condition at the time of the accident. The law requires the carrier to furnish safe cars.

12. **VERDICT: Against Weight of Evidence: Practice.** The question of whether or not a verdict is against the weight of the evdence rests especially in the sound discretion of the trial court, and if it is not shown that such discretion was abused

the appellate court will not reverse the judgment on the ground that the verdict was against the weight of the evidence.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*John H. Lucas, Frank G. Johnson* and *Halbert H. McCluer* for appellant.

(1) The court erred in not giving defendant's instruction in the nature of a demurrer to the evidence offered at the close of plaintiff's case and renewed at the conclusion of all the evidence. Hebeler v. Railroad, 112 S. W. 34; Markowitz v. Railroad, 186 Mo. 359; Hogan v. Railroad, 150 Mo. 54; Reno v. Railroad, 180 Mo. 486; Eppstein v. Railroad, 197 Mo. 733; Van Bach v. Railroad, 171 Mo. 346; Boyd v. Railroad, 105 Mo. 381; Guyer v. Railroad, 174 Mo. 351; Roenfeldt v. Railroad, 180 Mo. 565; Porter v. Railroad, 199 Mo. 99. (2) The court erred in giving each of the following instructions for plaintiff over the defendant's objections as follows: 1P, 2P, 3P and 4P. As to 1P: Cahill v. Railroad, 205 Mo. 406; Cornovski v. Railroad, 207 Mo. 274; Masterson v. Railroad, 204 Mo. 519; Ruchenberg v. Railroad, 161 Mo. 87; Stanley v. Railroad, 114 Mo. 620. (3) The court erred in refusing to give each of the following instructions requested by the defendant as follows: 19, 20, 21, 22 and 23. As to 23: Hogan v. Railroad, 150 Mo. 55. (4) The court erred in giving each of the following instructions on its own motion, as follows: 17 and 18. As to 17: Grout v. Railroad, 125 Mo. App. 561. (5) The court erred in not giving each of the following instructions as requested by defendant as follows: 5D, 8D, 12D, 13D and 16D, and erred in modifying said instructions and giving them and each of them to the jury in their

modified form. As to 12D: Feary v. Railroad, 162 Mo. 99; Maxey v. Railroad, 95 Mo. App. 309. As to 16D: Hogan v. Railroad, 150 Mo. 55. (6) The court erred in admitting the following evidence over defendant's objections as follows: First. Evidence of L. E. McGhee as to distance within which car could have been stopped. Russ v. Railroad, 112 Mo. 45; Benjamin v. Railroad, 50 Mo. App. 610. Second. Evidence of J. J. Kopfer as to distance in which car could have been stopped. Ruschenberg v. Railroad, 161 Mo. 70; Mammerberg v. Railroad, 62 Mo. App. 563. (7) The verdict was so much against the evidence that it could only have been reached by bias and prejudice, and should not be permitted to stand.

*Walsh & Morrison* and *Virgil Conkling* for respondent.

(1) The demurrer to the evidence was properly overruled. Oates v. Railroad, 168 Mo. 544; Schafstette v. Railroad, 175 Mo. 152; Peterson v. Railroad, 199 Mo. 331; Klockenbrink v. Railroad, 172 Mo. 678; Powers v. Railroad, 202 Mo. 283; White v. Railroad, 202 Mo. 562; McQuade v. Railroad, 200 Mo. 158; Beier v. Railroad, 197 Mo. 215; Latson v. Railroad, 192 Mo. 460; Baxter v. Railroad, 198 Mo. 1; Prendeville v. Railroad, 107 S. W. 452; Linder v. Railroad, 103 Mo. App. 581; Septowski v. Railroad, 102 Mo. App. 119; Zander v. Railroad, 206 Mo. 445; Bakery Co. v. Railroad, 127 Mo. App. 190. (2) There was no error in instructions given on behalf of plaintiff. (a) No assumption of fact in instruction number 1. Geary v. Railroad, 138 Mo. 259; Dammann v. St. Louis, 152 Mo. 198; Phippen v. Railroad, 196 Mo. 348; State v. Grayor, 89 Mo. 605; O'Connell v. Railroad, 106 Mo. 482. (b) The duty of the motorman at common law is properly stated. Sluder v. Railroad, 189 Mo. 107; Septowski v. Railroad, 102 Mo. App. 119; Senn v. Railroad, 108 Mo. 148; Winters v. Railroad, 99 Mo. 517. (3) The court gave defend-

ant's instructions in the form requested at this trial. The modifications made at the former trial were proper, however. See cases cited under point 1 and: Zeis v. Brewing Assn., 205 Mo. 651. (4) There was no error in admission of plaintiff's evidence. Defendant's counsel refused to make definite objections when requested by the court. O'Neill v. Kansas City, 178 Mo. 91; Heinzle v. Railroad, 182 Mo. 555.

WOODSON, J.—The plaintiff sued the defendant in the circuit court of Jackson county to recover the sum of $5,000 for the alleged negligence in running over and killing her husband, Matthew L. Kinlen, on Grand avenue, in Kansas City, with one of its cars. The trial resulted in a judgment for plaintiff for the amount sued for; and defendant's motions for a new trial and in arrest of judgment proving unavailing, it duly appealed the cause to this court.

As the sufficiency of the pleadings is not challenged, we will omit them from the statement of the case.

Plaintiff's husband was killed on Grand avenue, almost in the center of the block between Twenty-third and Twenty-fourth streets, by being struck by a south-bound car on the west track—the particulars of which will be shown by the testimony of the witnesses. It was admitted that at the time Kinlen was killed he and plaintiff were husband and wife. The following was the substance of plaintiff's testimony:

Norman C. Hall testified that at the time of the accident he was on the west side of Grand avenue, going north. Mr. Kinlen was killed almost at the center of the block between Twenty-third and Twenty-fourth streets on the west track by a south-bound car. When he first saw the buggy it was on the east side of the street, going south. It started to cross the track in a southwesterly direction. The hind wheel commenced to slide on the track. The car was then 120

to 125 feet away. No bell was rung or signal of any kind given. The driver was trying to get off the track, which seemed to be a little above the pavement, and the wheels "scooted" on the rail. The motorman did not seem to try to stop the car and it struck the buggy hard and shot it forward on to the horse. Mr. Kinlen was thrown out over Dr. Carl's head and lit on the track. Dr. Carl followed him. Mr. Kinlen went under the car. On cross-examination Mr. Hall stated that when he first noticed the car it was probably fifty to one hundred feet south of Twenty-third street, and the buggy was about two hundred to two hundred and twenty-five feet south of Twenty-third street at that time. The right hind wheel was sliding on the west rail of the west track. On redirect examination he stated that the car was number 636.

Richard W. Montgomery testified that the block from Twenty-third to Twenty-fourth street was 460.9 feet in length. The roadway from curb to curb was sixty-three feet in width, and there is a slight grade up-grade going south, which starts about one hundred feet south of Twenty-third street.

Edwin C. Hodkin testified that at the time Mr. Kinlen was killed he was on Grand avenue a little above Twenty-third street. He saw the buggy going south. He first noticed it passing Twenty-third street. He was about a hundred feet behind the car when it hit the buggy. The buggy got on the track about one hundred and twenty-five feet south of Twenty-third street, and when they tried to get off the track they could not make it. The wheels were sliding on the track, and they were trying to get off. At that time the car was between a hundred and a hundred and twenty-five feet behind the buggy. The car passed him going south and he noticed the motorman looking in a southeasterly direction as he passed. They were putting up a signboard over in that direction. The motorman was not looking straight ahead and didn't

sound any alarm, and he didn't see any effort made to check the car. The car hit the buggy a good hard jolt, the seat tipped over and broke off, and the men went out. When he got up there Mr. Kinlen was still under the car. The car ran forty or fifty feet after it struck the buggy. On cross-examination he testified that the car was running about fifteen miles an hour. It did not stop at Twenty-third street. The buggy was moving along at a pretty good gait.

Claude White testified that he was near Twenty-fourth and Grand avenue on the east side of the street. He saw two men going south on the east side across the tracks. He saw the car coming south and hit the buggy hard, the seat fell off and the men were thrown out under the car. When he first saw the buggy on the track the car was about one hundred feet from it, and it kept on coming until it hit the buggy. He noticed the motorman immediately before the buggy was hit, and he was looking east where there were some painters painting a signboard; he was looking right at this signboard, apparently. Witness was walking north and the car and buggy were coming towards him. The front right wheel of the buggy was off the track, but the hind wheel was sliding on the rail. While the car was running one hundred feet before it struck the buggy no bell was rung or warning given. On cross-examination he stated that when he first saw the danger to the men he stopped there to watch. On redirect examination he stated that it was a dry, dusty and hot day and the sun was shining. The motorman stopped when he tipped the buggy. He was looking east until the time he hit the buggy.

L. E. McGhee testified that he had previously worked for the Metropolitan Street Railway Company for about two years, and was familiar with the equipment of car number 636 on July 18, 1903; that he had run on the old Lindell in St. Louis about two years and on the St. Louis & Suburban in St. Louis about

three years as motorman; that he had operated cars exactly like car number 636, and belonging to the same series; that that car running south on Grand avenue between Twenty-third and Twenty-fourth streets at the rate of fifteen miles an hour on a clear, dry, dusty day, with the equipment in proper order, could be stopped by a reasonably skillful motorman, having due regard for the safety of the passengers on the car, after he saw a person or object in a position of peril ahead of the car, in forty or forty-five feet.

Samuel T. Carl testified that he was a physician and was in the buggy with Mr. Kinlen on the day that he was killed. The accident occurred about the center of the block. The buggy was headed in a southwesterly direction. Mr. Kinlen had driven on the track for the purpose of passing two loads of stone on the west side of the street, coming north; they had passed the stone wagons when the buggy was hit. They drove on the track for about two hundred feet. Something struck the buggy with a great deal of force. That is all that he remembered until he was at home again after the accident. He did not hear any bell sounded before they were struck. On cross-examination he stated that his recollection was that they were driving on the west side of the street and were forced on to the track just before they got to Twenty-third street.

Virgil Cooper testified that at the time Mr. Kinlen was killed he was going south on the west side of Grand avenue between Twenty-third and Twenty-fourth streets. The car and the buggy were about fifty or sixty feet apart when he first noticed them. The car was going faster than the ordinary gait. The car continued right on until it struck the buggy. No bell or signal was given during that time. The car hit the left hind wheel of the buggy.

Philip Welch testified that at the time Mr. Kinlen was killed he was one of the deputy sheriffs of Jackson county. He was on the car standing at the front door.

When he first saw the buggy the car was about half way between Twenty-third and Twenty-fourth streets. The car did not stop at Twenty-third street. Before the car struck the buggy it was pulling off a little southwest. Part of the buggy was off the track, but the hind wheels were sliding on the track. According to his best opinion the car was all from a hundred to a hundred and fifty feet away from the buggy at the time the wheels started to slide, and the wheels were sliding when the buggy was struck by the car, and the men were thrown out into the middle of the track, and the car ran over them. No bell was rung during all of this time. The motorman did not attempt to stop the car until immediately before the buggy was struck. On cross-examination he stated that he was looking at the buggy because he was afraid they were going to catch up with it. It was then about one hundred or one hundred and fifty feet away, right on the track in front of the car. They did not turn until they passed a team south of Twenty-third street. As soon as the work wagon passed them they attempted to get off.

Defendant admitted that the Metropolitan Street Railway Company was operating the line at the time of the killing of Mr. Kinlen, and that it was operating the car in question, number 636, by its agents, servants and employees at said time.

Evidence was offered by the defense in an attempt to show that the men fell out of the buggy on to the track fifteen or twenty feet in front of the car, and that the horse then ran away, and that the buggy was not struck by the car at all. Some of the evidence offered by the defense was to the effect that the buggy in which the deceased was riding struck another buggy, and some evidence was offered that it struck a wagon, and some evidence that the men fell out when the wheel of the buggy caught and slid along the rail of the street car track. Evidence was also offered

that the buggy had no mark on it. As this theory of the accident was rejected by the jury, it is probably unnecessary to go into the evidence in detail at this point.

The motorman, Kopfer, was put on the stand by the defendant and testified that the buggy appeared in front of the car about forty feet away. That "Just as soon as ever I seen them start to drive out in front of me, I seen there was an accident going to occur;" and that when he actually undertook the stopping of his car he stopped it in eight or ten feet.

Such additional facts as are necessary for a proper understanding of the case will be stated in the opinion.

I. The first insistence of counsel for appellant is that the trial court erred in refusing its instruction in the nature of a demurrer to the evidence, asked at the close of respondent's case and renewed at the conclusion of all the evidence.

A demurrer to the evidence admits as true every fact which the testimony tends to prove, and every inference which may reasonably be drawn therefrom. [Twohey v. Fruin, 96 Mo. 104.] There was ample evidence tending to show that the hind wheels of deceased's buggy hung to and slid along the rail of appellant's street car track in his endeavor to cross over it from the east to the west side of Grand avenue, and thereby prevented him from crossing it as speedily as he would otherwise have done, and that at the time the sliding began the car was a hundred feet or more north of the buggy, running about fifteen miles an hour; that deceased had no knowledge of its approach, and that by the exercise of ordinary care the motorman in charge of the car could have stopped it or so slackened the speed thereof in time to have prevented the injury.

The streets of our cities are public thoroughfares

upon which all have the right to travel, but neither the pedestrian, the street car nor the carriage drawn by horses has the exclusive right to the use thereof. Their rights and duties are relative, and all must exercise reasonable care in order not to injure each other. While a motorman in charge of a car is not necessarily required to stop his car every time a man, horse or vehicle crosses in front of him, yet in populous cities where the streets are crowded with people, ordinary care requires him to keep a vigilant watch for those who, for any cause, are exposed to the danger of being struck by the approaching car. And when the motorman saw or by the exercise of ordinary care could have seen Mr. Kinlen's buggy hanging to and sliding along the rail, the law imposed the duty upon him to use reasonable care to stop the car or slacken the speed thereof, and thereby avoid striking him, and whether he did so or not was a question for the jury to determine. That duty may not have required him to bring the car to a full stop; that would depend upon the circumstances of the case, and was properly left to the jury. And as was said by this court in the case of Oates v. Railroad, 168 Mo. l. c. 544-5: "The duty of the company in this regard is just the same as the duty of one individual or citizen to another when they meet on the highway and the horse of the one becomes frightened at the vehicle of the other, or at anything upon the vehicle of another. Because a street car carries more people than any other kind of conveyance, or because it is authorized to run more rapidly than a vehicle can ordinarily be legally driven, or because the rush and restlessness of the age make unreasonable demands for more and more rapid transit along the crowded thoroughfares of populous cities, it does not follow that a street car can be run in disregard of the rights of persons traveling by other means, nor that a street car company is exempt from the common-law duty of every one to exercise ordinary

care, nor that it is only liable where the agents act wantonly, maliciously and heedlessly. [Benjamin v. Railroad, 160 Mass. l.c. 5, citing and following Commonwealth v. Temple, 14 Gray 69, and Driscoll v. Railroad, 159 Mass. 142; Ellis v. Railroad, 160 Mass. 341.] These cases are strikingly similar to the case at bar.'' In that case plaintiff's horse became frightened at the approaching car and began backing until the buggy was forced onto the track, and then the car was slowed up but continued to approach the horse, all the while ringing the bell violently, until the car came within a few feet of the horse, when suddenly he wheeled around and ran away and threw plaintiff out and injured him. The court held that was a case for the jury to pass upon.

The case of Schafstette v. Railroad, 175 Mo. 142, is a case where the plaintiff drove onto a street car track something more than a block in front of an approaching car, and then turned and drove down the track until struck and injured by the car. At the close of plaintiff's evidence, defendant interposed a demurrer, and in discussing the case this court, on pages 151 and 153, used this language: ''This contention is based upon the theory that the plaintiff's own evidence shows he was guilty of such contributory negligence as bars a recovery. The specific negligence claimed is that the plaintiff drove upon the track, or so near it as to make a collision unavoidable, when he saw a car coming a block and a half away. The length of the blocks in the outlying part of the city where this accident occurred is not stated, but assuming them to be the usual length of three hundred feet, the fact is then presented that the plaintiff drove upon the track when the car was about five hundred feet away, that is, about the width of Green Lea place, which is sixty feet, and the distance of a block and a half. The court is asked to say, as a matter of law, that to thus drive onto a track, or to turn into a street,

when a street car is coming but is five hundred feet
distant, constitutes such contributory negligence that
the plaintiff cannot recover, if the street car runs into
the rear of the vehicle.  The court is further asked
to declare as a matter of law that under such circum-
stances it is the duty of the citizen to stop and wait
until the street car has passed.  And Boyd v. Railroad,
105 Mo. 371, and Watson v. Railroad, 133 Mo. 246,
are especially relied upon to support these contentions.
Those cases correctly declare the law to be that 'one
who knowingly crosses a track of a railway, in such
close proximity to a moving train as to be struck there-
by before he could cross,' is guilty of such concurring
negligence as bars a recovery, and that the operatives
of a train, seeing a peron, who is *sui juris,* approach-
ing the track, have a right to presume that he will stop
at a safe distance from the track and not attempt to
cross 'immediately in front of the train.'  The law
thus declared is correct but it does not apply to, or
fit the conditions presented by this case.  The plain-
tiff did not attempt to cross the track 'in such close
proximity to a moving train as to be struck thereby
before he could cross,' nor 'immediately in front of
the train.'  The car was five hundred feet distant
when he went upon the track, and the motorman could
have seen that he was upon the track when the car
was that distance away from him, and could further
have seen that he was not attempting to cross the track
at all, but was driving on or near the track and in
the same direction that the car was traveling, thus
having his back to the car, while the motorman had
his face towards the plaintiff's wagon and could not
help from seeing it, if he had looked, and must be
held in law to have seen it, because by the exercise of
the slightest degree of care he could not fail to see it.
In the Boyd case the deceased stepped upon the track
'immediately in front of the engine' which was run-
ning at a speed of forty or forty-five miles an hour.

In the Watson case the deceased was struck 'when about stepping' on to the track. Such cases are so radically different from this case that they can have no possible application. It is argued, however, that if street cars are required to check up every time a person approaches the track no time can be made and that the traveling public demands rapid transit. It is true that street cars are not compelled to check up every time a person approaches a track, but it is equally true that if a person is on or so near a track that a car cannot pass without a collision, and the operator of the car sees or by the exercise of ordinary care can see the condition of danger of such person, it is his duty to check the speed of the car or even stop the car entirely to prevent injury to the person. This duty is just the same between street cars and a citizen as it is between any two citizens when using a street. The traveling public has no right to demand such rapid transit on streets of a city as to amount to negligence in the running of the car. The citizen who is not in such a hurry, but is exercising ordinary care while upon the street, has rights that are just as sacred in the eye of the law as those of the hurrying crowds who demand such rapid transit, and if a street car company heeds the demands of the latter class and thereby negligently injures the former, it must stand the consequences. The rights and duties of street car companies and citizens traveling in vehicles are thus stated in the recent case of Oates v. Railroad, 168 Mo. l. c. 544.''

In our opinion the facts of this case bring it fairly within the rule announced in those cases. Kinlen was driving south in a buggy on the west side of Grand avenue, and when near the center of the block between Twenty-third and Twenty-fourth streets he met two heavily-loaded wagons, and in order to avoid them he drove to the east side of the track and then south until he passed the wagons, and then started to

drive back to the west side, when his buggy wheels struck the track and slid along the rail instead of passing over it. While in that position, according to plaintiff's evidence, the car approached deceased from the rear, without warning, at a rate of speed of fifteen miles an hour, and struck the buggy with such force as to throw the occupants therefrom to the ground in front of the car, and they were thereby run over and injured. When plaintiff's husband first drove upon the track the car was more than a block away, and had the motorman kept a vigilant lookout he could have discovered his perilous position in time to have averted the injury, or at least there was ample evidence tending to show that fact. And as said by this court in the case of Petersen v. Railroad, 199 Mo. l. c. 340: "We know of no inexorable rule of law that requires a traveler in a closed vehicle going along a public street of a city on which a street railroad track is laid to look behind him for an approaching car, of which he has no warning and of the proximity of which he has no knowledge, every time his horse or vehicle may be about to go on, along or across the rails of the track."

See, also: Powers v. Railroad, 202 Mo. l. c. 283; White v. Railroad, 202 Mo. l. c. 562; McQuade v. Railroad, 200 Mo. l. c. 158; Klockenbrink v. Railroad, 172 Mo. 678; Beier v. Railroad, 197 Mo. 215; Latson v. Railroad, 192 Mo. l. c. 460; Baxter v. Railroad, 198 Mo. 1; Zander v. Railroad, 206 Mo. 445.

We must, therefore, hold that the action of the court in refusing the demurrer to the evidence was proper.

II. Appellant next complains of instruction numbered one given for respondent. It reads as follows:

"The court instructs the jury that it was the duty of the defendant's motorman, in charge of the car men-

tioned in evidence, to exercise reasonable care to keep
a vigilant watch-out ahead for persons and vehicles
upon or approaching the track upon which the car
in question was running. If, therefore, you believe
from the evidence that Matthew L. Kinlen was, at the
time and place in question, in a position of imminent
peril of being struck by the car mentioned in evi-
dence, by reason of the fact that the buggy in which
he was seated was upon or approaching the track upon
which said car was running, and that the motorman
saw him in such position of danger, if any, or by the
exercise of reasonable care would have so seen him
in time to have slackened the speed of said car or to
have stopped the same, by the exercise of reasonable
care and thus have avoided striking and injuring him,
but negligently and carelessly failed to do so; and
if you further believe and find from the evidence
that by reason of the foregoing careless and negligent
acts of said motorman, if you find them to have been
careless and negligent, the buggy in which plaintiff's
husband was riding was struck and plaintiff's husband
was thrown out of the same and under said car and
killed, then your verdict must be for the plaintiff, even
though you believe and find from the evidence that
deceased negligently placed himself in dangerous proxi-
mity to the street car mentioned in evidence.''

This instruction is assailed for two reasons:   (1)
because it is contended there was no evidence upon
which to base it.   We are unable to concur in that
view of the evidence.   The testimony was ample to
warrant the court in giving the instruction.

The second objection urged against this instruc-
tion is directed to the following language contained
therein:   ''If, therefore, you believe and find from
the evidence that Matthew L. Kinlen was at the time
and place in question in a position of imminent peril
of being struck by the car mentioned in evidence, by

216 Sup—11

reason of the fact that the buggy in which he was seated was upon or approaching the track upon which said car was running.'' Counsel for appellant contends that the quoted clause was erroneous and prejudicial to the defendant, for the reason that it assumed that deceased was in danger by simply driving on or being near the track. This contention is untenable. The instruction does not assume the deceased was in a place of danger simply because his buggy was upon or near the car track, but it required the jury to find those facts to be true in the light of all the other facts and circumstances stated in the instruction before they could find for plaintiff. There is nothing said in the cases of Cahill v. Railroad, 205 Mo. 393, and Cornovski v. Railroad, 207 Mo. 263, which sustains appellant's contention, or that is inconsistent with the views here expressed.

Appellant requested the court to give the four following instructions which were refused, and to the action of the court in refusing each of them the appellant duly excepted:

''19. The court instructs the jury that although you may find from the evidence that no bell was rung or other warning given of the approach of the car you cannot find against defendant for the failure to ring the bell or give any warning, and your finding on that issue will be for the defendant.

''20. The court instructs the jury that there is no evidence that the car was run at a negligent rate of speed at or prior to the time of the accident in question and on that issue your finding will be for the defendant.

''21. The court instructs the jury that there is no evidence that the bell upon the car in question was not sounded prior to the time the car struck the buggy, and on that issue your finding will be for the defendant.

''22. The court instructs the jury that there is

no evidence that the car of defendant was run at a negligent rate of speed at the time and place of the accident, and on that issue your finding will be for defendant.

"23. If the deceased Matthew Kinlen knowingly drove across the street car tracks in question in such close proximity to a moving car as to be struck before he could get across said tracks, then your verdict must be for the defendant."

There was evidence which tended to show that the bell was not rung and that the car was running at a rate of speed of fifteen miles an hour in one of the principal streets of Kansas City, where there were many people, vehicles and teams, which were proper matters for the jury to consider in connection with the other facts and circumstances shown in evidence. That being true there was no error in the court's action in refusing instructions numbered 19, 20, 21 and 22 asked by appellant.

But instruction numbered 23 presents a more serious proposition. It in substance told the jury that if Kinlen knowingly drove across the tracks in such close proximity to the approaching car as to be struck before he could cross, then their verdict should be for defendant.

Counsel for appellant contend that if Kinlen knowingly crossed the track so close to the car as to be struck before he could cross, then he was guilty of contributory negligence, and the respondent should not be permitted to recover. While upon the other hand counsel for respondent insists that said instruction is in conflict with the law, known as the "humanitarian doctrine," and for that reason was properly refused.

As an abstract proposition the instruction in our opinion correctly declares the law, and if there was evidence upon which to base it then the action of the court in refusing it was reversible error.

The humanitarian doctrine does not go so far as to authorize a recovery where the injured party knowingly drives in front of an approaching car, and when he knows he will not have time to cross in safety. To so hold would be equivalent to abolishing the law of contributory negligence. Yes, it would do more than that, for such ruling would make the company absolutely liable when a party is injured in his attempt to cross in front of the approaching car when he knows he has not the time in which to do so; and that, too, when the company is guilty of no negligence whatever, for the obvious reason that if he has not sufficient time in which to cross in front of the car in safety, then as a necessary corollary thereto the motorman would not have the time in which to stop or slacken the speed of the car and thereby avoid the injury. The law is well settled that where one *even negligently* places himself in front of a rapidly approaching train and is injured thereby, he cannot recover if the employees in charge of the train used reasonable care to avoid the injury, after they discovered his perilous position, or by the exercise of ordinary care might have discovered it. [Harlan v. Railroad, 64 Mo. l. c. 483.] That being unquestionably the law, then how much stronger should the reason be for holding he cannot recover when he knowingly or wilfully steps or drives in front of a rapidly approaching car? [Prewitt v. Eddy, 115 Mo. 283.] Nor will the law permit a recovery where the injured party knowingly places himself in a place of danger and knowingly or wilfully permits the train to strike him, even though the employees in charge thereof could have prevented it by the exercise of ordinary care. The humanitarian doctrine only applies and authorizes a recovery where the injured party is ignorant or oblivious to the impending danger; but if he knew of the approaching danger, then clearly he would be guilty of such contributory negligence as would pre-

vent a recovery whatever the conduct of the agents in charge of the train might be. Such conduct might render such employees amenable to the criminal laws of the State, but should not mulct the company in damages. There would be no law or justice in holding the company liable under such circumstances, for such conduct would not be within the scope of their express or implied authority to represent the company. There would be no more reason or justice for holding the company liable under such circumstances than there would be for holding the proprietor of a gun store liable for the action of his clerk who knowingly and wilfully while lawfully handling one of his employer's guns should shoot a person unlawfully, in the store, with the knowledge and acquiescence of such person. In either case the principal, an absolutely innocent party, would have to answer for the sins and criminal conduct of the agent and of the injured person. Such a judgment would be based upon injustice and immorality; and, therefore, if we look at the instruction from any of the views suggested, it should have been given, if, as before stated, the record contains sufficient evidence upon which to base it.

In that regard we wish to state that counsel for appellant has not called our attention to any such evidence, and after a careful reading of this long record, we have been unable to find any testimony whatever which tends to show that Kinlen had any knowledge of the approaching car prior to the time it struck him; but, upon the contrary, all of the facts and circumstances in evidence indicate that he was totally ignorant and perfectly oblivious to the impending danger which awaited him.

We are, therefore, of the opinion that the action of the court in refusing instruction numbered twenty-three was proper.

III.  The court of its own motion gave on behalf
of the respondent the following instruction, to which
action of the court appellant duly excepted:

"17.  The court instructs the jury that they can
find for plaintiff only in the event that they find the
facts as required by instruction 1, and they will not
consider in that connection the failure, if any, to give
a warning of the approach of the car nor the exces-
sive rate of speed, if any, of said car."

The objection urged upon our attention to this
instruction is best stated in the following language of
counsel for appellant: "While the facts set forth
were not proper to be considered by the jury, as acts
of negligence, which would authorize a recovery, they
should, especially the speed of the train, have been
considered in determining whether the motorman
should have stopped his car sooner than he did.  The
speed of the car was certainly an element of evidence
that should have been considered in determining the
distance within which the car could have been stopped.
While the speed should have been in that way con-
sidered, it should have been in that way only, as
shown by the case of Grout v. Railroad, 125 Mo. App.
561."

Conceding this objection is well taken, yet appel-
lant is in no position to avail itself of it, for the reason
its counsel invited the error by asking instructions
numbered 19, 20, 21 and 22, which cover in detail
the identical matters embraced in the instruction com-
plained of, and evidently it was given to cover the
questions presented in those four instructions.  In fact,
counsel for appellant so states that to be the fact in
their brief filed in this case.  The law is well settled
to the effect that where counsel requests the trial
court to make a ruling and that request is granted,
then such action of the court cannot be complained of,
even though it be erroneous.  A party cannot complain
of an instruction in harmony with one requested by

himself. [Thorpe v. Railroad, 89 Mo. 650; Olfermann v. Railroad, 125 Mo. 408.]  In ruling upon the action of the court in refusing to give instructions 19, 20, 21 and 22, asked by appellant, we hold the trial court properly refused them, for the reason that it was proper for the jury to take into consideration the rate of speed the car was running and whether or not the bell was rung in determining whether or not the employees in charge of the car did everything in their power to avert the injury, after they discovered Kinlen's perilous position, or by the use of ordinary care could have discovered it.  And for this same reason instruction numbered seventeen was improperly given, but for the reason before stated appellant is in no position to complain of the error, for its counsel invited its omission by asking those instructions.

IV.  Counsel for appellant next complains of the action of the court in not giving instructions numbered 5, 8, 12, 13 and 16 as requested, and of the action of the court in modifying them and giving them in their modified form.

The record shows that at a previous trial of this cause these same instructions were asked by counsel for appellant, but instead of giving them in the form as then asked the court modified them and gave them as modified, to all of which exceptions were duly saved; but at the last trial counsel for appellant, in response to a request of the court, handed up these identical instructions in their modified form, and the court gave them in that form, without a word having been said by court or counsel regarding their modification.

Counsel for respondent insist, and correctly so in our opinion, that there was no objection made or exceptions saved to the action of the court in giving said instructions.  The court might well have assumed the modifications of the instructions were acquiesced

in by appellant's counsel and that all objections thereto were waived. We must, therefore, rule this point against appellant.

V. Appellant complains of the action of the court in admitting the following testimony given by the witnesses McGhee and Kopfer.

McGhee's testimony was as follows:

"Q. Are you familiar with that portion of Grand avenue between Twenty-third and Twenty-fourth, beginning at a point, say, 150 feet south of Twenty-third street, and running on south to Twenty-fourth street? A. Yes, sir. Q. Are you familiar with the grade there? A. Yes, sir. Q. I will ask you a question as a whole, which you may answer yes or no, if you can. Take car 636, which was in use on the Metropolitan Street Railway on July 18, 1903, and say that it was running at the point I have indicated to you, at the rate of fifteen miles an hour, that it had an ordinary load of passengers on it, that it was filled with passengers, that it was a clear, dry, dusty day, and the equipment was in proper order, the brakes and controller, going to the south, within what distance could a reasonably skillful motorman stop that car, having due regard for the safety of the passengers on the car, after he saw an object in a position of peril, or a person in a position of peril ahead of the car?

"MR. LOOMIS: The defendant objects to the question because it is not a proper hypothetical question, does not state all the facts proven in evidence, assumes facts which have not been proven in evidence, does not state all the facts and conditions which the witness should know and take into consideration in expressing his opinion upon the subject, and the further objection is that the witness has not shown himself qualified to express an opinion on that proposition; we desire to cross-examine him.

"MR. WALSH: If Mr. Loomis will indicate what facts are included in this hypothetical question that are not in evidence, what facts are omitted from this hypothetical question that are in evidence, and the facts which he claims about the surroundings and situation that are left out, I will merely modify my question to meet his objection.

"THE COURT: I think, Mr. Walsh, that possibly the witness has not been as well qualified as I would like to have him qualified; I will let Mr. Loomis, before the hypothetical question is answered, examine Mr. McGhee as to his expert knowledge and experience.

"MR. WALSH: Very good.

"Examination by Mr. Loomis:

"Q. Mr. McGhee you have never run or operated car 636? A. No, sir.

"Q. You never saw it to examine it in detail yourself? A. Yes, sir.

"Q. To examine it? A. No, sir.

"Q. Just merely saw the car? A. Yes, sir.

"Q. You never ran it or examined it? A. No, sir.

"Q. What lines did you run on as motorman? A. I ran on the Old Lindell in St. Louis, about two years, and I ran on the St. Louis & Suburban in St. Louis as motorman about three years.

"Q. What line did you run on here? A. On the Fifteenth street as a gripman.

"Q. I mean as a motorman? A. And Eighteenth street as a motorman.

"Q. What line on Eighteenth street did you run on? A. I was extra; I ran on Vine, Eighteenth and Brooklyn.

"Q. How long did you run on that line? A. About nine months.

"Q. Nine months as an extra? A. Well, I had a regular run, mind you, for a short time.

"Q. Mr. McGhee, don't you know that there wasn't any air-brakes on this line at that time? A. I know there was; they all had air-brakes.

"Q. On the Brooklyn line? A. No, not on the Brooklyn; I know there wasn't on the Brooklyn, but there is on the others.

"Q. That is Vine and Eighteenth? A. Yes, some of the cars are there now that were there then.

"THE COURT: Did you run a car of this same series? A. Exactly; that car is out there now; I rode down on it a night or two ago.

"THE COURT: Did you ever operate an electric car having the same quantity of electric power and the same braking apparatus and appliances as this car had? A. Not the brake exactly, only on Eighteenth, I did; I did on the Eighteenth; those cars are exactly the same.

"THE COURT: As 636? A. All those 600 series are the same cars; the car is the same exactly.

"THE COURT: I think the witness is qualified.

"MR. WALSH: Now, if I have omitted any facts, I would like Brother Loomis to state them; if I have assumed any facts that are not in evidence, I would like him to state what the facts are.

"THE COURT: What facts have been omitted, Mr. Loomis?

"MR. LOOMIS: I have stated my objection, Your Honor.

"THE COURT: What facts have been omitted in the question which ought to have been embodied in the question?

"MR. LOOMIS: I think there are several very important facts.

"THE COURT: The objection being too general, and counsel refusing to inform the court as to his specific objection, the objection is overruled. Answer the question as to the length of time in which the car

could be stopped.   To which ruling defendant duly excepted.

"Mr. Walsh:   The distance in which the car could be stopped under those circumstances?   A.   Between forty and forty-five feet."

And Kopfer's testimony is as follows:

"The Court:   Very well; what facts are embodied in the question which ought not to be embodied in it?

"Mr. Loomis:   I have made all objection I care to make, Your Honor.

"The Court:   Very well, the objection is overruled for indefiniteness; go ahead, and answer the question, Mr. Kopfer.

"To which action and ruling of the court the defendant at the time duly excepted.

"(Question read by the reporter).

"A.   Why, a man, to take and stop it the right way, a man could stop it, I suppose, in a length and a half of the car, if you will stop it and stop it right, don't just chug it right down.

"Q.   With safety to the passengers, as quick as you can stop it?

"Mr. Loomis:   We make the same objections.

"Objection overruled by the court.

"To which action and ruling of the court the defendant at the time duly excepted.

"A.   Yes, sir.

"Q.   How long is one of those cars?   A.   Well, I suppose a car is about forty feet long.

"Q.   And it would stop in a car length and a half? A.   In a car length and a half.

"Q.   That would be about sixty feet; so, in order to insure stopping the car, if you saw somebody, or some object on the track, or approaching the track, you would have to begin sixty feet away from it? A.   Why, begin right away, just as quick as I could.

"Q.   It would have to be sixty feet away, if it

took that distance in which to stop the car? A. Why, of course, for a person to go ahead and stop the car and stop it right.

"Mr. Loomis: We make the same objection to that question.

"Q. I will ask you this question: Take a car on a day such as that, car 636, loaded with passengers, the brakes being in good order and the equipment all proper, within what distance can you stop that car, with safety to the persons on the car, within what distance in feet?

"Mr. Loomis: We object to that question as not a proper hypothetical question; it does not state all the facts proven in evidence, assumes facts not proven in evidence.

"The Court: What facts are omitted, Mr. Loomis?

"Mr. Loomis: Well, it does not state all the facts that have been sworn to by these witnesses.

"The Court: Well, I am asking you what facts are omitted.

"Mr. Loomis: I was making my objection as specific as I could, Your Honor.

"The Court: I want to know, Mr. Loomis, what facts are omitted from the hypothetical questions asked which should be embraced in the question; can you give me one?

"Mr. Loomis: I made all the objections, Your Honor, I care to make to the question."

There are three objections presented to the admission of this testimony: (1) that McGhee was not qualified as an expert witness to give an opinion as to the distance in which the car in question could have been stopped; (2) that the hypothetical questions embraced matters of which there was no evidence, and excluded facts of which there was evidence; and (3) that counsel for respondent had no right to assume in his hypothetical questions that the car, running gear and

other appliances thereof were in good condition at the time the accident occurred.

We will discuss these objections in the order stated.

As regards Mr. McGhee's qualification to testify as an expert, the record discloses that he was perfectly familiar with the location and conditions that existed where the accident occurred, and of the kind of car which struck and killed Kinlen, and that he had been a motorman or conductor for five or six years prior thereto, and during all that time had constantly run, stopped and started similar cars. If that experience would not qualify a man as an expert to give his opinion as to the distance within which such a car could be stopped, then we are at a loss to know what would qualify him. If he could not learn that fact in that length of time he must have been a man of very poor intellect; and there is nothing in this record to indicate that he was not a man of average intelligence. According to all of the authorities he was qualified to speak as an expert upon the question. [Meily v. Railroad, 215 Mo. 567.]

In the second objection it is contended that the hypothetical questions propounded to the witness did not include all of the facts which the evidence tended to prove, and assumed facts to exist which were not proven by the evidence. When this objection was made both the court and counsel for respondent inquired what facts were included not supported by the evidence and what matters were excluded which were proven by the evidence, to which counsel for appellant replied that he had made his objection, and declined to state specifically the matters referred to in his objections. The court then overruled the objections because they were too general and did not inform the court of the real point it was called to rule upon. There should be no masked batteries in the trial of a lawsuit. All matters should be uncovered in a manner

that the court, counsel and jury may see and understand all questions presented for determination. No court can intelligently rule upon a question without it understands the question; and where counsel refuses to make his objections specific and certain it is then the duty of the court to overrule same. And as was correctly said by VALLIANT, J., in the case of O'Neill v. Kansas City, 178 Mo. l. c. 100: "When an objection is made to a question propounded to a witness, it should be sufficiently specific to inform the court and opposing counsel of the real point in the objection. In this respect there is no difference between an objection made to a hypothetical question and one made to any other question. [Rogers on Expert Testimony (2 Ed.), p. 67; Stearns v. Field, 90 N. Y. 640.]" To the same effect is Heinzle v. Railroad, 182 Mo. l. c. 555.

The third and last objection complains of the hypothetical questions because they assumed the car and its appliances were in good condition at the time of the accident. The law requires carriers of passengers to furnish safe cars and appliances with which to convey them and requires the carriers to use ordinary care to prevent injuring persons who have equal rights with them upon the streets. The presumption is that the carrier has obeyed the law regarding those matters, and the law will never presume negligence on the part of the carrier, or on the part of anyone else for that matter. That being true, we are of the opinion that the question properly assumed the car and its appliances were in good condition at the time of the accident. The questions simply assumed that to be true which the law required the appellant to do, namely, to furnish safe appliances.

We are, therefore, of the opinion that the objection is without merit.

VI.  At the trial counsel for appellant propounded the following question to witness Nelson:

"Q.  Just go ahead and state, Mr. Nelson, what you saw with reference to the accident."

In reply thereto the witness made the following answer.  "A.  They were trying to get ahead of the car ———."

Before the answer was completed the following occurred:

"MR. WALSH:  I object to that as a conclusion of the witness.

"Objection sustained and the answer of the witness stricken out as a conclusion of the witness.

"To which action and ruling of the court the defendant at the time duly excepted.

"Q.  Just go ahead and state what you saw the horse and buggy do, how they came to get in front of the car, if they did get in front of the car, and what occurred after they got in front of the car; go ahead in your own way.  A.  I don't know how to explain myself now.

"Q.  Go right ahead.

"THE COURT:  Just state what the people in the buggy did, or what the buggy did, and what the car did, without trying to explain what anybody tried to do, or anything of that sort; just what you saw yourself.

"A.  Well, then, all it was, I seen the seat fall off, and the two men fell in front of the car.

"Q.  How far in front of the car did they fall out of the buggy, as near as you can tell?  A.  Well, I should judge about ten feet or so; I am not positive, probably a little longer or a little shorter distance, but probably just about ten feet."

There is no merit in this contention, for the reason that while the court sustained the objection to the answer as given, yet the questions and answers which

followed showed that the same testimony was admitted in another form.

VII.   It is finally insisted that the verdict of the jury is against the weight of the evidence, and for that reason it should have been set aside by the trial court; and the refusal of that court to do so is assigned as error.   The question as to whether or not a verdict is against the weight of evidence rests specially in the sound discretion of the trial court and if it is not shown that such discretion was abused, then this court will not interfere.   But independent of that, after a careful reading of all the evidence preserved in this record, we are of the opinion that the weight thereof preponderates in favor of the respondent.

Finding no reversible error in the record, the judgment should be affirmed.   It is so ordered.

All concur; *Lamm, J.,* in result.