MILLS *v.* MICHIGAN ELECTRIC RAILWAY CO.

1. STREET RAILWAYS — NEGLIGENCE—CONTRIBUTORY NEGLIGENCE — AUTOMOBILE DRIVERS AND MOTORMEN UNDER RECIPROCAL OBLIGATION TO USE VIGILANCE.

   Where traffic in a city street is congested, and automobiles in passing each other are liable to be temporarily forced upon the street car track, the rights and duties of drivers of automobiles and motormen on the street cars are reciprocal, requiring that special vigilance be exercised by them.

2. SAME—QUESTIONS FOR JURY.

   In an action for personal and other damages caused by a collision between plaintiff's automobile and defendant's street car, conflicting testimony as to defendant's negligence and plaintiff's contributory negligence *held*, to carry the case to the jury.

3. SAME—TRIAL—INSTRUCTIONS NOT ERRONEOUS.

   The instructions of the court on the question of plaintiff's contributory negligence, *held*, not erroneous.

[1]Street Railroads, 36 Cyc. pp. 1477, 1492, 1493, 1495; [2]Id., 36 Cyc. pp. 1609, 1611, 1625; [3]Id., 36 Cyc. p. 1641.

4. EVIDENCE — OPINION EVIDENCE AS TO SPEED OF STREET CAR —
   WEIGHT OF OPINION FOR JURY.

   In view of the fact that plaintiff qualified to express an
   opinion as to speed, it was not error to allow him to
   testify as to how fast, in his opinion, the street car was
   traveling at the time it collided with his automobile; the
   value of his opinion being for the jury.

5. SAME—MOTOR VEHICLES—ASSIGNMENT OF CLAIM TO INSURANCE
   Co.

   There was no reversible error in sustaining an objection
   to defendant's attempt to show, on cross-examination, that
   plaintiff had assigned his claim for damages to his auto-
   mobile to an insurance company, under the showing made
   upon the record; the record failing to show offer of any
   written evidence of an assignment.

Error to Jackson; Williams (Benjamin), J. Sub-
mitted April 6, 1926. (Docket No. 22.) Decided
February 4, 1927.

Case by Harry H. Mills against the Michigan Elec-
tric Railway Company for personal and other injuries.
Judgment for plaintiff. Defendant brings error.
Affirmed.

*Whiting & Kleinstiver,* for appellant.

*J. Adrian Rosenburg,* for appellee.

STEERE, J. This is a negligence case brought to
recover for personal injuries to plaintiff and damages
to his automobile, which was run into by a street car
of defendant on Michigan avenue in the city of Jack-
son. Automobiles were thickly parked all along
Michigan avenue at the curb at an angle of approxi-
mately 45 degrees. Between the rear of the parked
autos on the south side and the south rail of the
south car track there was ample room for one auto-
mobile to drive and clear street cars; if two automobiles
were abreast the left wheels of the auto farthest north

---

4Evidence, 22 C. J. §§ 779, 823; L. R. A. 1918A, 702; 5Id.,
22 C. J. § 1236.

would be just inside of the south rail of the track. Street cars operating easterly on the five city lines in Jackson and the interurbans from Battle Creek and Lansing use this track. At the close of plaintiff's testimony defendant asked for a directed verdict, which was denied. A like request was made at the close of all the testimony. This request was also denied. The jury returned a verdict in favor of plaintiff in the sum of $1,100. How much of this was for injury to the automobile and how much for personal injury to plaintiff does not appear. Later a motion for a new trial was made upon several grounds. The trial judge was of opinion that the case was properly tried and denied the motion. The case is here for review upon exceptions properly taken.

It is contended by appellant that:

"Plaintiff was guilty of contributory negligence in (*a*) failing to take proper precautions to observe the car before driving onto the track, and (*b*) in proceeding a distance and turning upon the track without again looking to reassure himself. The court erred (*a*) in limiting and restricting, in the charge, the issue upon contributory negligence, and (*b*) in not submitting the question of plaintiff's failure to again look and reassure himself that the car was not directly upon him."

Counsel cite in support of this contention *Gillett* v. *Traction Co.*, 205 Mich. 410, 428-430; *Molby* v. *Railway*, 221 Mich. 419; *Champaign* v. *Railway*, 181 Mich. 672, and other authorities.

Plaintiff's testimony is in part as follows:

"The accident occurred between 4:30 and 5 o'clock p. m. I was alone; I was driving the car. I came north on Jackson street and stopped at Michigan avenue. A new Packard sedan, a lady driving, went ahead of my car there. I followed her east; she was driving at a very low rate of speed and I followed her until I got about to Lourim's store and I looked over my right shoulder and there was a street car at

Jackson street.  *  *  *   There were cars ahead of
me, and at that time it was clear at the rear; I could
see the street car at Jackson street; there were cars
driving up and down there; the traffic was heavy;
there were cars parked at the curb at an angle of
approximately 45 degrees.   I saw a Cadillac backing
out from in front of Cook & Feldher's and I swung
to the left, put my left wheels in the middle of the
car track.   When I started to make that turn I was
53 paces of three feet each from the east sidewalk line
of Jackson street.   That was about where the street
car was when I looked back.   I had proceeded east
after I started to make the turn about 7 paces before
I got straddle of the car track; it was just a little
over 7 paces.   My left front and left rear wheels were
over the south rail of the east-bound track.   There
are double tracks there.

"*Q.* How far had you proceeded in an easterly direc-
tion after you got straddle the track before you were
struck?

"*A.* About 52 feet.   There was a street car coming
west in plain view on the west-bound track.   I didn't
see any other street car at that time.   This automobile
has no rear doors; you go in the front door and go
through between the front seats which are divided.
When the car hit me I went down between the two
seats, and reached over and set my emergency brake
with my left hand and I headed it into the curb by
the alley and stopped.   My first impression was that
a truck had struck me coming out of the alley.   I
later found it was the street car.   I heard a second
crash immediately after the car struck me.   I got
my car going and started up the alley; got out and
talked to the motorman first; or started to talk to
him; I asked him if he couldn't stop the car—(Ob-
jected to as immaterial and not part of the *res gestæ.*)
*  *  *

"*The Court:* Immediately following the accident?

"*A.* Right after the accident happened.   I asked
him if he could not stop his car, and he said, 'what
the hell are you doing on the tracks.'   I had no further
conversation with him."

The testimony was in conflict as to whether the gong
was sounded, speed of the cars, and the vigilance

exercised by the parties.    Mrs. Cooley said she swung out a little when the car was backing out from the curb as she passed it but did not get on the track; that she had driven 14 or 15 years; did not drive very fast on Main street; when she saw the car backing from the curb she slowed up to let it get away from the curb and swung out to the left a little but not clear onto the car track.    Plaintiff said he followed her at a safe distance and when the rear of the backing car came between them he swung to the left and had gone from 21 to 23 feet in doing so before his left wheels got onto the car track.

Elmer Hudson, defendant's motorman, testified in substance that he was proceeding slowly, sounding his gong constantly; that plaintiff turned on the track without giving notice of his intention to do so and he (Hudson) immediately did all he could to avoid the accident.    His testimony as to speed and distance was fluctuating and in part inconsistent.    On his cross-examination he gave this significant testimony:

"*Q*. Don't you think, if you have got the estimate of his speed correct, that you must be a little bit wrong about your estimation of speed, Mr. Hudson?

"*A*. Well, if I am right in the estimate of his speed, I am wrong in the estimate of my speed.

"*Q*. Surely.

"*A*. If I am right in the estimate of my speed, I am wrong in his speed."

The somewhat lengthy charge of the court, as directed to issues made by the conflicting testimony, was in part as follows:

"Generally speaking, the plaintiff, in order to recover in this action must satisfy you by a preponderance of the evidence, that is, by the greater weight of the evidence in the case:

"1. That the direct, natural and proximate cause of the collision was the negligence of the defendant.

"2. That the plaintiff himself was free from negligence on his part which contributed to the collision.

"3. That is the general rule and applies here, unless you should find by the greater weight of the evidence that plaintiff got into a position of danger, and after so doing, defendant's motorman knew, or by the use of ordinary care under the circumstances ought to have known plaintiff's danger, and then still had time to have checked the speed of the street car and prevented the injury, and failed to do so. Then, in such case, even if plaintiff was negligent in the first instance, such negligence will in law be deemed the remote cause of the accident, and the subsequent negligence of the company will be deemed the proximate cause of the accident. * * *

"If plaintiff desired to drive on the car track, it was his duty, before going thereon, to observe and ascertain that no street cars were approaching within such distance as would cause a reasonable, prudent and careful driver to refrain from going on the track, and if plaintiff was on the track, and saw or heard the approach of a street car from the rear, it would be his duty to get off the track, as soon as he reasonably could under all the circumstances. * * *

"If defendant was operating this car at a reasonable speed under all the circumstances as you find them to be, and the motorman was keeping a proper lookout, and was sounding his gong, and the brakes and emergency appliances on the car were in reasonable order, and plaintiff swung his automobile onto the track so suddenly at such a short distance in front of the street car that the motorman could neither anticipate such action nor by the exercise of ordinary care, with the appliances at hand, properly and carefully used, stop his car in time to avoid the collision, then defendant would not be liable in this action. * * *

"The accident in question occurred in the middle of a block between crossings. I instruct you that under these circumstances, the motorman of defendant's car was not required to sound his gong continuously along West Michigan avenue, nor was he under any obligation or duty to sound his gong until he saw, or until it was apparent, that some vehicle or person who might be pursuing its course in safety along the street on either side of the track, indicated a purpose to cross, or approached dangerously near the track. This is not a case of a car coming to a crossing where it is

made the duty of the motorman to give warning of its approach; there was no duty on the part of the motorman to sound a gong or warning at the place of this accident, unless and until the vehicle in question indicated a purpose to cross or drive upon the defendant's track.

"Defendant's motorman had a right to presume and to operate his car in view of such presumptions that the plaintiff would not turn his automobile out of the line of traffic when a street car was in close or dangerous proximity."

We find none of the authorities cited by counsel for appellant so analogous in facts as to be decisive of this case. The following language found in *Bruening* v. *Railway Co.*, 180 Mo. App. 434, at p. 439 (168 S. W. 248), seems quite in point:

"All classes of travelers and vehicles have equal rights to the use of the public streets. Autoists have no legal right of way over pedestrians nor have street cars superior rights to automobiles or other vehicles (*Kinlen* v. *Railway Co.*, 216 Mo. 145 [115 S. W. 523]). The fact that a street car must run on a fixed and unalterable course gives it a right to require slower vehicles ahead to turn off its track on proper warning being given, but its motorman has no right to run it over a public and much-used street at excessive speed and crush into other vehicles without warning. We perceive no reason for the idea that the driver of a vehicle traveling along that part of the street occupied by a car track must keep looking behind to guard against being overtaken and run down by a street car. Observing the car so far away that it would not overtake him if run at reasonable speed, plaintiff had a right to proceed along the track until warned by a signal that the motorman desired to pass him. An automobile itself is a speedy, and if negligently handled, a dangerous vehicle, and a rule that would require its driver to divide his attention between the way in front and the way behind would be senseless and dangerous in its consequences. Plaintiff cannot be held guilty in law of negligence either in turning on to the track or in failing to look back after so doing. The characterization of his conduct

under proper pleadings would have been an issue of fact for the jury to determine;" citing cases.

*Vide,* also, Babbitt on Motor Vehicles (3d Ed.), §§ 1904, 1905; Berry on Automobiles (5th Ed.), § 749; Huddy on Automobiles (7th Ed.), § 737; *Clark* v. *Traction Co.,* 167 Mich. 694.

The case we are considering shows that plaintiff was driving his automobile on a main business street where automobiles thickly parked at the curb might back out at any time, where traffic was congested and automobiles so many that those going in the same or opposite direction were liable to come in contact with each other or be temporarily forced upon the street car track, requiring that special vigilance be exercised not only by their drivers but by the motormen of the passing street cars.    Under such circumstances the rights of the automobiles and the street cars were reciprocal.   We think the conflicting testimony carried the case to the jury and find no prejudicial error in the instruction of the trial judge.

Complaint is made because plaintiff was allowed to express an opinion as to how fast the street car was traveling.   We have already quoted his testimony as to where he saw the car when he turned upon the track, how far he had traveled when overtaken and with what result.   The record also shows he had been in the habit of driving an automobile for some time. He qualified to express an opinion as to speed and it was for the jury to say how valuable his opinion was. Babbitt on Motor Vehicles (3d Ed.), § 2188.

The attorney for the defendant, on the cross-examination of plaintiff, asked:

"*Q.* Subsequent to the accident, Mr. Mills, so far as the damage to the car, your automobile was concerned, you made an assignment of that to the Travelers Insurance Company, did you not?"

Objection was made to this question, and the following colloquy occurred:

"*The Court:* When do you claim he made this assignment?

"*Mr. K*—(defendant's attorney): Prior to the time of this suit, we understand it to be.

"*The Court:* Did you know it at the time you put your plea in?

"*Mr. K*—: I don't know whether I knew it or not; it is a matter that comes in reduction of damages, reduction of the damages to the extent to which they have been assigned.

"*The Court:* It is a matter that goes to the foundation of the suit.

"*Mr. K*—: Not as to the foundation of the suit.

"*The Court:* It goes to the foundation of the suit as to the damages to the automobile.

"*Mr. K*—: Yes.

"*The Court:* The testimony so far shows that at the time of the accident, and at the time of bringing the suit, Mr. Mills was the owner of the car in question, and the court will rule that he has a right to maintain the action, and the court is not interested in the subject of whether or not there was insurance on the car, and the jury ought not to take any account of that fact. This was a matter which in my opinion should have been raised by a motion to dismiss, if it was to be availed of by the defendant. Not having done so, the action should proceed as it is based."

As before noted, the verdict of the jury does not show what amount was allowed for damages to the car nor what amount was allowed for personal injury. The record does not show offer of any written evidence of an assignment. Under the showing made by this record, we do not find any reversible error in sustaining the objection.

. The other assignments of error have been examined but do not call for discussion.

The judgment will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.